100 So.2d 396 (1958)
Julia SLOCUM and Homer V. Slocum, her husband, Appellants,
v.
FOOD FAIR STORES OF FLORIDA, INC., a Florida corporation, Appellee.
Supreme Court of Florida.
February 14, 1958.
Britton, Hodges & Hyman, Miami, for appellants.
Brown, Dean, Adams & Fischer, Miami, for appellee.
DREW, Justice.
This appeal is from an order dismissing a complaint for failure to state a cause of action. Simply stated, the plaintiff sought money damages for mental suffering or emotional distress, and an ensuing heart attack and aggravation of pre-existing heart disease, allegedly caused by insulting language of the defendant's employee directed toward her while she was a customer in its store. Specifically, in reply to her inquiry as to the price of an item he was marking, he replied: "If you want to know the price, you'll have to find out the best *397 way you can * * * you stink to me." She asserts, in the alternative, that the language was used in a malicious or grossly reckless manner, "or with intent to inflict great mental and emotional disturbance to said plaintiff."
No great difficulty is involved in the preliminary point raised as to the sufficiency of damages alleged, the only direct injury being mental or emotional with physical symptoms merely derivative therefrom. Kirksey v. Jernigan, Fla., 45 So.2d 188, 17 A.L.R.2d 766. While that decision would apparently allow recovery for mental suffering, even absent physical consequences, inflicted in the course of other intentional or malicious torts, it does not resolve the central problem in this case, i.e. whether the conduct here claimed to have caused the injury, the use of insulting language under the circumstances described, constituted an actionable invasion of a legally protected right. Query: does such an assertion of a deliberate disturbance of emotional equanimity state an independent cause of action in tort?
Appellant's fundamental argument is addressed to that proposition. The case is one of first impression in this jurisdiction, and she contends that this Court should recognize the existence of a new tort, an independent cause of action for intentional infliction of emotional distress.
A study of the numerous references on the subject indicates a strong current of opinion in support of such recognition, in lieu of the strained reasoning so often apparent when liability for such injury is predicated upon one or another of several traditional tort theories. See annotation 15 A.L.R.2d 108; Wade, Tort Liability for Abusive Language, 4 Vanderbilt L.Rev., p. 63; Prosser, Intentional Infliction of Mental Suffering: a New Tort, 37 Mich.L.Rev. 874; Magruder, Mental and Emotional Disturbance and the Law of Torts, 49 Harv. L.Rev. 1033. Cf. Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430, quoting Sec. 4, Declaration of Rights, Fla. Const. F.S.A.
Appellee urges that we are foreclosed by the case of Mann v. Roosevelt Shop, Inc., Fla., 41 So.2d 894, 895, wherein the Court stated: "The case at bar presents a case of gross insult; however the law affords no redress for insult alone. See MacIntyre v. Fruchter, Sup., 148 N.Y.S. 786." But that language was obviously confined to those cases where an attempt is made to state an action in defamation for injury to reputation as opposed to peace of mind, and we find no other opinion of this Court which bears directly on the present issue.
A most cogent statement of the doctrine covering tort liability for insult has been incorporated in the Restatement of the Law of Torts, 1948 supplement, sec. 46, entitled "Conduct intended to cause emotional distress only." It makes a blanket provision for liability on the part of "one, who, without a privilege to do so, intentionally causes severe emotional distress to another," indicating that the requisite intention exists "when the act is done for the purpose of causing the distress or with knowledge * * * that severe emotional distress is substantially certain to be produced by [such] conduct." Comment (a), Sec. 46, supra. Abusive language is, of course, only one of the many means by which the tort could be committed.
However, even if we assume, without deciding, the legal propriety of that doctrine, a study of its factual applications shows that a line of demarcation should be drawn between conduct likely to cause mere "emotional distress" and that causing "severe emotional distress," so as to exclude the situation at bar. Illus. 5, sec. 46, supra. "So far as it is possible to generalize from the cases, the rule which seems to be emerging is that there is liability only for conduct exceeding all bounds which could be tolerated by society, of a nature especially calculated to cause mental damage of a very serious kind." Prosser, Mental Suffering, 37 Mich.L.R. 889. And the most practicable view is that the functions of court and jury are no different than in other *398 tort actions where there is at the outset a question as to whether the conduct alleged is so legally innocuous as to present no issue for a jury. Wade, p. 91, supra. See also 7 Miss.L.J. 390.
This tendency to hinge the cause of action upon the degree of the insult has led some courts to reject the doctrine in toto. Wallace v. Shoreham Hotel Corp., D.C. Mun.App., 49 A.2d 81. Whether or not this is desirable, it is uniformly agreed that the determination of whether words or conduct are actionable in character is to be made on an objective rather than subjective standard, from common acceptation. The unwarranted intrusion must be calculated to cause "severe emotional distress" to a person of ordinary sensibilities, in the absence of special knowledge or notice. There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions. While the manner in which language is used may no doubt determine its actionable character, appellant's assertion that the statement involved in this case was made to her with gross recklessness, etc., cannot take the place of allegations showing that the words were intended to have real meaning or serious effect.
A broader rule has been developed in a particular class of cases, usually treated as a distinct and separate area of liability originally applied to common carriers. Rest.Torts, per.ed., sec. 48. The courts have from an early date granted relief for offense reasonably suffered by a patron from insult by a servant or employee of a carrier, hotel, theater, and most recently, a telegraph office. The existence of a special relationship, arising either from contract or from the inherent nature of a non-competitive public utility, supports a right and correlative duty of courtesy beyond that legally required in general mercantile or personal relationships. Cases collected, section 14, annotation 15 A.L.R.2d 108, 136. Republic Iron & Steel Co. v. Self, 192 Ala. 403, 68 So. 328, L.R.A. 1915F, 516; Wallace v. Shoreham Hotel, supra.
In view of the concurrent development of the cause of action first above described, there is no impelling reason to extend the rule of the latter cases. Their rationale does not of necessity cover the area of business invitees generally, where the theory of respondeat superior underlying most liabilities of the employer would dictate some degree of conformity to standards of individual liability. This factor, together with the stringent standards of care imposed in a number of the carrier cases (Haile v. New Orleans R. Co., 135 La. 229, 65 So. 225, 51 L.R.A.,N.S., 1171), may have influenced the treatment of the subject by editors of the Restatement, where the statement of the carrier doctrine is quite limited in scope and classified separately from the section covering the more general area of liability under consideration. But whether or not these rules are ultimately adopted in this jurisdiction, the facts of the present case cannot be brought within their reasonable intendment.
Affirmed.
TERRELL, C.J., and THOMAS, HOBSON and ROBERTS, JJ., concur.