234 So.2d 406 (1970)
Iona SACCO and Carl Sacco, As the Husband of Iona Sacco, Appellants,
v.
EAGLE FINANCE CORP. OF NORTH MIAMI BEACH, a Florida Corporation, Appellee.
No. 69-708.
District Court of Appeal of Florida, Third District.
April 21, 1970.
Rehearing Denied May 18, 1970.
Essen & Essen, Miami, for appellants.
Patton, Kanner, Tietig & Segal, Donald W. Stobs, Jr., Miami, for appellee.
Before PEARSON, C.J., and BARKDULL and HENDRY, JJ.
HENDRY, Judge.
The appellants were plaintiffs below, having based their complaint on three counts, to wit: (1) intentional interference with peace of mind; (2) invasion of privacy; and (3) trespass. At the close of the plaintiffs' case, the court granted the defendant's motion for directed verdict.
Diana Sacco, daugher of the appellants, had become indebted to the corporate appellee. *407 The actions of the appellee's agents in attempting to procure collection of that debt gave rise to the facts which the plaintiffs contend support their numerous causes of action. On October 17, 1968, one of the appellee's agents, having learned that Diana was then residing in her parents' house, telephoned her there and engaged her in a conversation. Diana testified at the trial that the ensuing conversation caused her to become very upset and prompted her to hang up on the caller. However, the appellee's agent phoned immediately afterward, again speaking with Diana, and again causing her to become upset. Upon observing her daughter's consternation, appellant Iona Sacco thereupon took the extension phone and began her own conversation with the agent. Apparently, the conversation disintegrated into a shouting match, finally resulting in the phone being hung up on the appellant's agent for the second time.
A third call was placed to the Sacco's house, and was received by Iona Sacco. The earlier exchanges between these parties continued and amplified, with a result identical to the previous one as Mrs. Sacco hung up on the caller. For the following two hours the appellee's agent continued to phone the residence of the Saccos while one of the women would occasionally answer the phone in order to learn who the caller was.
The next incident of consequence occurred when another of the appellee's agents arrived at the Sacco residence. The record indicates that this agent announced his presence by banging on the front door, and his summons was answered by appellant Sacco who thereupon requested him to leave so that she could begin to make arrangments with her daughter to settle the difficulties. The offer was rejected by the agent, who refused to leave. Needless to say, this activity provoked Mrs. Sacco into shouting her remonstrations at the appellee's agent, and he, in turn, responded with similar vehemence and causticity.
Thereupon, the appellee's agent temporarily left the threshold of the Sacco's residence, only to return several minutes later and begin pounding on the front door again. This time, however, Mrs. Sacco did not answer the door or engage in a further exchange of hostilities with the agent. After several minutes of futile waiting, the agent shouted an obscenity, presumably directed at the Sacco residence and all human and canine female occupants therein. Then, taking several steps back from the house into the street, the agent shouted his parting words to the effect that he would return the next day to get the money.
The exchanges between these parties did not end with the above incident however. Several minutes later, the appellee's second agent again called the Sacco residence from a nearby phone booth, receiving the by-then standard procedure of Mrs. Sacco's hanging up the phone. This time, however, the agent deliberately left his phone receiver off the hook, causing the Sacco's telephone line to be virtually inoperative for twenty to thirty minutes.
The first count of the plaintiffs' complaint alleges that a cause of action exists in tort for intentional interference with mental tranquility. The defendant below moved to dismiss this count on the grounds that the general rule in Florida with regard to this particular tort is that intentional interference with emotional tranquility is not, in and of itself, an independent tort in Florida. See Slocum v. Food Fair Stores of Florida, Inc., Fla. 1958, 100 So.2d 396. We must agree with the trial court's application of the doctrine in Slocum, supra, under the facts shown by this record. As was stated in the first impression case of Mann v. Roosevelt Shop, Inc., Fla. 1949, 41 So.2d 894, "The case at bar presents a case of gross insult; however, the law affords no redress for insult alone." Id. at 895. The case which demonstrates the type of circumstance wherein this tort will lie, i.e., when it is coupled with some other intentional or malicious *408 tort, occurred in Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188. The case at bar cannot be viewed as controlled by the principles in Kirksey, supra.
However, we do find merit in Counts 2 and 3 of the plaintiffs' complaint, as causes of action were stated for invasion of privacy and trespass. As to the invasion of privacy aspect of this case, the defendant below argued that any insults which may have been directed toward the plaintiff Iona Sacco were never sufficiently communicated to the public, and this necessary prerequisite was therefore missing. Having reviewed the record, we are of the opinion that the evidence clearly established a genuine issue of fact as to whether or not the insults were communicated to the public when the appellee's agent shouted his parting comments to the Saccos in particular  and the neighborhood in general  regarding his forthcoming attempts to seek payment of the debt. In response to this line of argument, the appellees contend that the record does not conclusively demonstrate that the agent's shouted remarks were overheard by any particular person; thus, it appears to us that this issue should have gone to the jury under an instruction charging them to resolve the issue of communication to the public in their consideration of Count 2 alleging invasion of privacy. Cf. Abraham Used Car Co. v. Silva, Fla.App. 1968, 208 So.2d 500; Fiore v. Rogero, Fla.App. 1962, 144 So.2d 99.
Finally, the count of trespass also appears to have been proper for a jury's resolution. The appellee contends that its agent acted under the implied invitation which every man holds out to others for entry upon his property on proper occasions, either for business, courtesy, information, or otherwise. Prior v. White, 132 Fla. 1, 180 So. 347, 116 A.L.R. 1176. However, the above stated rule in Prior, supra, has been qualified and a summation of that qualification appears in 32 Fla.Jur. Trespass § 9, wherein it is stated: "Consent may be implied from custom, usage or conduct. [Prior v. White, supra.] Nevertheless, consent or license justify only acts that are within a fair and reasonable interpretation of the terms of the grant. C.I.T. Corporation v. Reeves, 112 Fla. 424, 150 So. 638 (1933)." In our opinion, the evidence submitted should have precluded the directed verdict which was granted as to Count 3 alleging a trespass. The jury should have been allowed to resolve this question as to whether or not the facts adduced at trial showed that the boundaries of consent were overreached by any unreasonable conduct of the appellee's agent.
Therefore, for the reasons stated above, the appealed order granting a directed verdict for the defendant is hereby affirmed as to Count 1 of the appellant's complaint, and reversed as to Counts 2 and 3 of the appellant's complaint.
Affirmed in part and reversed in part.