235 So.2d 33 (1970)
Willie Mae MILLER and William D. Miller, Husband and Wife, Appellants,
v.
MUTUAL OF OMAHA INSURANCE COMPANY and Leo R. Edgerton, Appellees.
No. K-238.
District Court of Appeal of Florida, First District.
May 5, 1970.
Rehearing Denied June 3, 1970.
Campbell & Andrews, De Funiak Springs, for appellants.
Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellees.
CARROLL, DONALD K., Judge.
The plaintiffs in an action on a medical benefits insurance policy have appealed from a judgment for the defendants notwithstanding the jury verdict as to the second count of the plaintiffs' amended complaint.
The principal question presented for our determination in this appeal is whether the allegation in the said second count of an intentional infliction of severe emotional distress is supported by the evidence at the trial.
The plaintiffs, husband and wife, received favorable jury verdicts at the trial on both counts of their two-count second amended complaint. The first count, which is not directly pertinent in the present appeal, was based on the plaintiffs' contractual claim for payment under the said policy issued by the defendant Mutual of Omaha Insurance Company and the said second count arose from the tort of intentional infliction of mental distress arising from the circumstances and abuses when the defendant-agent, Edgerton, wrongfully took the plaintiff wife's insurance policy for the defendant insurance company from her at her home.
The plaintiffs then allege in their said second count that, after their claims under the said policy had been presented, the defendant Edgerton came to their home and that:
"7. The defendant, Leo R. Edgerton, did then obtain  under false pretenses  the policy of insurance owned by the plaintiffs and herein sued upon by representing that he wanted to review the policy and thereafter threw a check on the table as a refund of premium and wrongfully took without permission the original policy of insurance, all constituting *34 unlawful interference with the plaintiffs' right to possession of said policy, and to this day the defendants have refused to tender or furnish to the plaintiffs the original policy as taken from them by the defendants.
"8. The defendant Leo R. Edgerton  with intent to inflict mental anguish and by acts, deeds, and words calculated to cause serious mental distress to the plaintiff (who he knew to be ill and suffering from Addison's Disease)  did then and there say, `What do you think you are trying to pull?'. `You know damn well you had that disease when you took the policy.', `Several people have tried to pull this off.', `We are not going to pay your hospital bills.', all of which did reasonably imply malice and great indifference to the health and welfare of the plaintiff, and all of which was calculated to cause plaintiff severe emotional distress.
"9. This conduct on the part of the said agent has had a profound effect on the physical and mental condition of Willie Mae Miller.
"10. The defendant wrongfully charged the plaintiff Willie Mae Miller with false representation, used abusive language in a manner and under circumstances which were intended to and did cause the plaintiff unnecessary and wrongful shame and shock, and the defendant at all times knew her condition of health.
"11. The conduct of the agent has caused the plaintiff Willie Mae Miller humiliation and embarrassment, has caused her to become extremely nervous and upset, and has had a profound effect on her mental and physical wellbeing.
"12. The conduct of the agent was willful, wanton, malicious, deliberate, and calculated to cause the damages and reactions as aforesaid."
During the trial the defendants timely moved for directed verdicts on both counts. Upon the denial of each motion by the trial court and after the rendition of the jury verdicts favorable to the plaintiffs on both counts, the defendants moved for a judgment notwithstanding the verdict and, in the alternative, a motion for a new trial on each count. The court denied both motions as to the first count and rendered a final judgment thereon and later the plaintiffs acknowledged full satisfaction of the said judgment and cancelled the same. Then the trial court entered the order appealed from herein granting the defendants' motion for judgment notwithstanding the verdict as to the said second count.
The testimony at the trial showed the following:
On March 16, 1965, the defendant insurer's salesman went to the home of the plaintiff Mrs. Miller for the purpose of selling her a group hospital insurance policy as a member of an REA Cooperative. She was about 55 years old and had a seventh grade education but could neither read nor write well. At the time she took the policy she was working and in good health, which fact was vertified by her doctor.
The said plaintiff told the salesman that she already had insurance with another company. They compared the two policies, and, although the rates were essentially the same, she decided to take the defendant's policy and cancel her existing policy.
The said plaintiff told the said salesman all she knew about herself, including disclosures concerning several operations she had had. She signed the application as prepared by the salesman, but she did not recall checking it. She also gave the salesman and the defendant insurer authority to check with her doctors (giving their names) and her hospitals.
In August of 1965, while she was visiting in Centralia, Illinois, she became dizzy and was placed in a hospital in Centralia, where the doctors originally thought she had diabetes, but later said it could be Addison's Disease. After discharge from the Illinois hospital, she entered a hospital in Pensacola, *35 Florida. She had never heard of Addison's Disease until August of 1965. The defendant insurer then refused to pay any of her medical bills.
The plaintiff Mrs. Miller testified at the trial that thereafter the defendant Leo R. Edgerton, an agent of the defendant insurer, came to the Miller home and said to her: "I am from Mutual of Omaha, and I have some bad news for you," or something to that effect, "* * * Mutual of Omaha is not going to pay your hospital * * *. You knew good and well that you had that when you taken out the policy. * * *" that he was talking "real loud and snotty like" and said "What do you think you are trying to pull * * *. There have been other people around here that tried to pull the same thing, but they didn't get by with it. Mutual of Omaha is not going to let them get by with it. * * *" She further testified that she then said, "I don't see why they are not going to pay it," and Edgerton replied, "`You knew you had that before you taken the policy. * * *'", and she said, "I didn't knew it. I had never heard of such a thing in the world as Addison's Disease." Mrs. Miller further testified that Edgerton asked to see the policy in question, stuck it in his side pocket, started out of the door and said sarcastically that he hoped that Mrs. Miller got along all right. Mrs. Miller did not give Edgerton permission to take the policy. She then went back in the room and cried, being "real sick and upset at the time," mostly about the way Edgerton had talked with her. She did not sleep that night and the next morning she was taken to the hospital. The defendant insurer had never returned her policy to her.
The treating physician at the hospital testified that Mrs. Miller was nervous and upset and could not sleep because of recent events.
The merits of this cause of action, as alleged in the said second count of the plaintiffs' amended complaint, were not properly before the trial court for determination and are not before this appellate court under the rules applicable to the entry of a judgment notwithstanding the verdict.
In Smith v. Peninsular Insurance Co., 181 So.2d 212 (Fla.App. 1966) we quoted with approval the following rule as applicable to the entry of a judgment notwithstanding the verdict:
"Motions for judgment notwithstanding verdict, like motions for directed verdict, should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence. Cf. Ely v. Atlantic Coast Line R.R. Co., Fla.App. 1962, 138 So.2d 521, 524 and cases there cited. The movant admits all material facts as attested by his adversary and also admits all inferences of fact favorable to the adversary that reasonably might be drawn from the evidence as a whole. Cash v. Gates, Fla.App. 1963, 151 So.2d 838, 840. If there is room for difference among reasonable men as to the existence of a material fact sought to be established, or as to a material inference which reasonably might be drawn from established facts, the case should be submitted to the jury. e.g. Budgen v. Brady, Fla. App. 1958, 103 So.2d 672, 674. On the instant record we cannot agree that a jury could not, as a matter of law, reach a valid verdict for the plaintiff. Accordingly that portion of the order granting judgment notwithstanding the verdict is reversed."
Applying the above rule to the case at bar, we do not think that it can correctly be held that, in view of the foregoing evidence, the plaintiffs' side of the case "is essentially devoid of probative evidence." By filing their motion the defendants admitted all material facts as attested by the plaintiffs and admitted all inferences of fact favorable to the plaintiffs that reasonably might be drawn from the evidence as a whole. It was, therefore, properly a question of fact to be submitted to the jury as to whether the defendants were liable for taking without permission her insurance *36 policy and for wrongfully mistreating her when the defendant Edgerton went to her home.
Since that question of fact was submitted to the jury for its determination at the trial, and since the jury has made such determination, the judgment appealed from should be, and it is, reversed and the cause is remanded with directions to enter a judgment for the plaintiff on the said second count in accordance with the jury verdict.
Reversed and remanded with directions.
JOHNSON, C.J., and RAWLS, J., concur.