370 So.2d 802 (1979)
Dan Gonzales GELLERT, Appellant,
v.
EASTERN AIR LINES, INC., a Delaware Corporation, Appellee.
No. 78-352.
District Court of Appeal of Florida, Third District.
April 17, 1979.
Rehearing Denied June 1, 1979.
*803 Horton, Perse & Ginsberg and Arnold R. Ginsberg; Ellis Rubin, Miami, for appellant.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellee.
Before SCHWARTZ, J., and CHARLES CARROLL (Ret.), and EZELL, BOYCE F., Jr. (Ret.), Associate Judges.
CHARLES CARROLL, Associate Judge.
This appeal is by Dan Gonzales Gellert, the plaintiff below, from a judgment for the defendant Eastern Airlines, Inc., entered upon granting defendant's renewed motion for directed verdict, after a jury verdict had been rendered in favor of the plaintiff for substantial amounts of compensatory and punitive damages.
The principal question presented by this appeal is whether, under the law of this state as pronounced by the Supreme Court and district courts of appeal, one may recover damages for intentional infliction of severe mental distress which is without physical contact, and which is not incidental to or consequent upon any separate tort or other actionable wrong. The judgment appealed from was predicated on the trial court answering that question in the negative. We hold that in so ruling the trial court was correct, and affirm the judgment.
The appellant was a pilot employed by Eastern. Based on his experience with a certain type of passenger aircraft then in use, plaintiff regarded as a defect therein (bearing on safety) the fact that the "automatic hold" (an automatic control device designed to maintain a set altitude level) could become disengaged silently upon inadvertent application of pressure on the wheel control column. The action by Gellert against Eastern (as it went to the jury after the court had eliminated other counts) was for damages for mental distress occasioned by certain actions which allegedly were done intentionally in retaliation for Gellert's contentions or criticisms of lack of safety in Eastern's said equipment and its pilot training procedures.
The complaint presented four counts. The first count charged defamation against Eastern, for having published, to other employees and to the Airline Pilots Association, the report of the company's doctor that it would not be safe for Gellert to fly aircraft. The second count charged Eastern breached plaintiff's employment contract, by not keeping such medical report confidential, by improperly removing Gellert from flight duty, and by allegedly destroying a written bid Gellert had made for a change of flight duty.
Count III sought recovery of damages for intentional infliction of mental distress, charging that conduct of Eastern (citing the incident of grounding, an incident relating to a ticket or pass, and the "mysterious lost bid") was intended to cause Gellert severe emotional distress, or was such that Eastern should have known it would have that effect. The fourth count sought a mandatory injunction to require Eastern to institute certain aircraft safety and training safeguards; and to enjoin Eastern from further acts of harassment.
On defendant's motion to dismiss, the trial court dismissed, as not being within the court's jurisdiction, the count for breach of contract and the count seeking by injunction to require Eastern to institute certain safety procedures. The count for defamation was eliminated at trial, by the granting *804 of a motion of the defendant for a directed verdict on that count.
With regard to the count on intentional infliction of mental distress, at trial the defendant moved for directed verdict at the close of the plaintiff's case and at the conclusion of the evidence. After verdict for the plaintiff, the defendant renewed the motion for directed verdict. The motion was granted, and judgment was then entered for the defendant, from which the plaintiff appealed.
Our disposition of this appeal does not require lengthy or detailed statement of the facts, or of the evidence adduced. In his experience as a first officer (co-pilot) on the L-1011 type passenger aircraft then in use by defendant, on two occasions the "altitude hold" became disengaged upon some contact being made with the control wheel column. Those occurrences took place prior to the time that a craft of that type crashed in the Everglades west of Miami while approaching Miami International Airport. By design the "altitude hold" was to disengage upon application of 15 to 20 pounds pressure on the control wheel column. When the "altitude hold" was "on", that fact was shown by a lighted indicator on the control panel, called an annunciator. When the automatic hold became disengaged, the annunciator light on the panel would go out. Such an inadvertent disengagement of the altitude hold was experienced by Gellert on two occasions. Gellert had reported the first such incident to a superior flight officer. He wrote a letter to Colonel Borman (then a vice president in charge of operations) relating to the operation of the automatic pilot and automatic hold and its silent disengagement, Borman replied by letter that the matter was being analyzed.
Gellert sent letters to the chairman of the board of Eastern and to the president of Eastern, in which among other things he expressed desire to testify as Eastern's representative at the hearing to be held by the National Transportation Safety Board regarding the Everglades crash. Instead, Eastern chose as its representative (witness) for that hearing the pilot who was its most experienced on that type craft. Gellert was granted leave to attend the hearing as a witness, without pay or expenses, and did attend and testify at the hearing.
After the NTSB made its findings, Gellert filed a petition with the Board for reconsideration of its findings in certain respects. Thereafter, he wrote lengthy letters to the FBI and to Colonel Borman, including in the latter a copy of the letter he had written to the FBI. The letters written by Gellert were referred to Eastern's psychiatrist and neurologist, Dr. Watt, for initial evaluation. Upon reviewing them, Dr. Watt reported to Eastern by memorandum that the "construction, tone, intent and implications" of the letters indicated some psychiatric disorder. Thereupon Gellert was notified he was removed from flight duty (but would continue on flight pay status), and it was requested that he report to Eastern's medical department for physical and psychological examination. As a result thereof, the doctor made a written report to Eastern in which the doctor expressed the view that he did not believe that it would be completely safe for Gellert to fly aircraft "at this time."[1] Based thereon Eastern's medical director, Dr. Serrano, informed Gellert he would not be on flight status, and would be placed on sick leave pay; that the medical records would be made available for examination by Gellert's physician; and that Gellert would be re-evaluated within a reasonable time. Some months later, upon a re-evaluation, Gellert was found then fit for and was returned to flight status. Without dissent, the medical witnesses, after reading the letters, found the actions of Eastern in this *805 regard were justifiable. However, that matter was one of the three items which Gellert charged caused him extreme mental distress.
Another item was one relating to a hearing with resultant reprimand to Gellert for his misuse of a certain type of pass issued to the pilots. Concededly Gellert had altered the destination of the pass, and had used it for purposes other than or in addition to those which were prescribed for its use. That was considered by Gellert as harassment, and as a matter that caused him mental distress.
A third incident was with reference to a bid which Gellert had mailed in, for change of pilot duty, to serve as captain on flights from a New York base. His was one of some 2,000 duty transfer bids handled. In sending in the bid, the envelope he used gave a return address but not his name. After a delay of approximately 60 days a letter was sent to "Occupant" at the address, stating the bid form that was sent in had been bare of any information. Gellert contended that such report that the bid form he had sent was in blank was false, and that by reason of that incident he suffered intense mental distress.
An additional incident upon which Gellert relied as causing him mental distress was that, prior to the time he testified before the NTSB, a fellow pilot who was a good friend talked to him about his intentions to so testify, and attempted to persuade him not to testify, and told him that it would be against his best interests to do so. Gellert viewed that as action directed by Eastern, in an effort to prevent him from testifying at the hearing. That fact, if it was so, was not established. To the contrary, the pilot who so advised Gellert testified he had done so on his own.
A further matter advanced by the plaintiff, although not alleged in Count III dealing with mental distress, was that he noted what he assumed to be intentional tampering with planes he was piloting. One such occurrence consisted of the fact that on a plane he was piloting between Washington and New York one of the motors lost practically all of its oil. Another was that an altimeter was found to be registering improperly by hundreds of feet. An assumption that Eastern as a retaliatory act against the plaintiff would thus intentionally sabotage a plane in a manner that well might cause loss of the plane and its passengers, is staggering and unreal.
Of the above incidents, those consisting of his being grounded, reprimanded for misuse of the pass, and the manner of handling of his bid for duty change, were charged and classified by the plaintiff as constituting breaches of his employment contract (in the contract count in his complaint). Those incidents did not constitute independent torts, and were not such as would form basis for action other than as claimed breaches of contract or as basis for the claim of unfair labor practices. Recovery cannot be had for mental distress which may have been brought about by a breach of contract, unless such breach amounts to an independent, willful tort. Hazen v. Cobb, 96 Fla. 151, 117 So. 853, 856 (1928); Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla. 1950); Henry Morrison Flagler Museum v. Lee, 268 So.2d 434, 436-7 (Fla. 4th DCA 1972); DeMarco v. Publix Super Markets, Inc., 360 So.2d 134, 136 (Fla.3d DCA 1978).
As pointed out above, the trial court granted judgment for the defendant on the ground that under the law of Florida intentional infliction of mental distress is not actionable when not incident to or connected with an independent tort. Such has been the uniform holding, and this rule appears to be one that is founded on sound policy. Kirksey v. Jernigan, supra, 45 So.2d 188 (Fla. 1950); Slocum v. Food Fair Stores of Florida, Inc., 100 So.2d 396 (Fla. 1958); La Porte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964); Korbin v. Berlin, 177 So.2d 551 (Fla.3d DCA 1965); Sacco v. Eagle Finance Corporation of North Miami Beach, 234 So.2d 406 (Fla.3d DCA 1970); Henry Morrison Flagler Museum v. Lee, supra, 268 So.2d 434 (Fla.4th DCA 1972); Knowles Animal Hospital, Inc. v. Wills, 360 So.2d 37 (Fla.3d DCA 1978).
*806 In Kirksey v. Jernigan, supra, the Supreme Court reversed the dismissal of a complaint for damages for mental pain and anguish suffered by the plaintiff as a result of conduct of the defendant which the Court regarded as a separate actionable wrong. Plaintiff's child had been killed by an accident in the home, during the absence of the plaintiff, the mother. Prior to plaintiff's return, the defendant undertaker had taken the body of the child without authority. Demands made by the plaintiff over several days for surrender of the child's body were refused by the defendant, who embalmed the body without authority. The Court stated such action of the defendant constituted "an actionable wrong, for which substantial damages may be recovered." Regarding the claim for damages for mental pain and anguish occasioned thereby, the court said:
"This court is committed to the rule, and we re-affirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved. Dunahoo v. Bess, 146 Fla. 182, 200 So. 541, following International Ocean Telegraph Company v. Saunders, 32 Fla. 434, 14 So. 148, 21 L.R.A. 810.
"But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages. See 15 Am.Jur., Damages, Sec. 179, page 596; Restatement of Torts, Section 47(b). The right to recover, in such cases, is especially appropriate to tortious interference with rights involving dead human bodies, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it."
In Slocum v. Food Fair Stores of Florida, Inc., supra, the plaintiffs sought damages for mental suffering and emotional distress (with ensuing aggravation of a heart condition), caused by an insult. The Supreme Court affirmed a dismissal of the complaint. The Court noted that the only direct injury was "mental or emotional with physical symptoms merely derivative therefrom", and rejected an invitation presented on the appeal to hold that recovery could be had for such mental distress as a separate cause of action absent an independent cause of action in tort. In so deciding, the court held it did not regard the making of the insult as constituting an independent actionable tort or wrong such as would furnish basis for recovery of damages for the alleged mental distress. In Slocum the Court recognized Kirksey v. Jernigan, supra, as being a decision that "would apparently allow recovery for mental suffering, even absent physical consequences, inflicted in the course of intentional or malicious torts."
In La Porte v. Associated Independents, Inc., supra, the plaintiff's pet dog was killed by defendant's employee by a wrongful malicious act committed within the sight of the plaintiff. In her ensuing action it was held that her mental distress occasioned thereby was a proper element of recoverable damages.
In Korbin v. Berlin, supra, this court reversed dismissal of a complaint seeking damages for the alleged intentional infliction of severe mental distress to a child which was brought about by a tortious act, a slander of the child's mother.
In Sacco v. Eagle Finance Corporation of Miami Beach, supra, this court upheld, as proper, the dismissal of a count of a complaint which sought damages for mental disturbance caused by repeated dunning telephone calls for collection of a debt, in the absence of an independent intentional or malicious tort. In so holding, the court said:
"The first count of the plaintiffs' complaint alleges that a cause of action exists *807 in tort for intentional interference with mental tranquility. The defendant below moved to dismiss this count on the grounds that the general rule in Florida with regard to this particular tort is that intentional interference with emotional tranquility is not, in and of itself, an independent tort in Florida. See Slocum v. Food Fair Stores of Florida Inc., Fla. 1958, 100 So.2d 396. We must agree with the trial court's application of the doctrine in Slocum, supra, under the facts shown by this record. * * * The case which demonstrates the type of circumstance wherein this tort will lie, i.e., when it is coupled with some other intentional or malicious tort, occurred in Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188. * * *"
In Knowles Animal Hospital, Inc., v. Wills, supra, recovery of damages was allowed to the owner of a dog, for mental pain and suffering of the plaintiffs which was occasioned by the independent tort of negligently leaving the dog lying on a heat pad for an extended period causing a severe burn of the dog which contributed to a need to destroy the dog.
In arguing that such damages should be recoverable without an independent tort, the appellant cites a dictum of the Supreme Court in the case of Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974). There, in quashing a decision of a district court of appeal which had undertaken to reject the impact rule, the Supreme Court stated that there may be circumstances under which recovery could be had for emotional or mental injuries, as when there has been physical impact "or when they are produced as a result of a deliberate and calculated act performed with the intention of producing such an injury by one knowing that such act would probably  and most likely  produce such an injury."
We agree that there are circumstances where recovery can be had for intentionally caused severe mental distress, but under the decided cases the circumstances for which recovery for such is allowed are those where the mental injury was occasioned by or as a consequence of a separate tortious wrong.
Gilliam did not involve the question which is of concern here. That case involved the impact rule. The dictum in Gilliam did not refer to the need of a separate tort, or to the lack of need of a separate tort, as essential to recovery for intentional infliction of mental distress, and we do not observe in that opinion any holding or expression of intent by the Supreme Court to change the law on this subject from that which has been established and applied in prior decisions.
The import of the rule under discussion is that when recovery is allowed for mental distress intentionally caused by or incident to a separate actionable tort or as a reasonably foreseeable consequence of such tort, in practical effect the damages which are awarded for the mental distress are consequential damages for the independent tort. To permit recovery of such damages in absence of any connected, separate tortious conduct would be legally impractical, as recognized in the application of the "impact rule", incident to which in Butchikas v. Travelers Indemnity Company, 343 So.2d 816, 819 (Fla. 1977), the Court said: "It would be far-reaching indeed to expand that notion to permit financial recovery for all of the emotional and mental strains which modern society inflicts on an individual by reason of its inevitable clashes."
Accordingly, for the reasons stated we hold the trial judge was eminently correct in concluding that recovery could not be had on the plaintiff's claim of intentional infliction of severe mental distress in the absence of its having been incident to or predicated upon a separate actionable tortious wrong.
It would appear that if the plaintiff had any basis for relief it was for breach of contract or upon a claim of unfair labor practices. Whether the facts were such as to present any valid claims on those bases, as to which we express no opinion, is not material in this case.
*808 The appellee, in addition to contending the judgment should be affirmed on the ground upon which it was entered by the trial judge, argues that the judgment is entitled to be affirmed on the separate ground, which was stated in its motion for directed verdict, that even if recovery could be had in absence of a supporting separate, independent tort, the evidence was insufficient to support a verdict for the plaintiff. In the judgment entered by the trial court that ground of plaintiff's motion for directed verdict was denied. We cannot agree that in such circumstance the evidence would be sufficient to support the verdict. The appellee is privileged to argue the question of insufficiency of the evidence as the basis for supporting the judgment, without the need to have filed a cross-appeal. Cerniglia v. C. & D. Farms, Inc., 203 So.2d 1 (Fla. 1968).
Under the decisions dealing with recovery for intentional infliction of severe mental distress, recovery therefor is proper only when the causatory conduct is deliberately done with intent to so harm the person, and is of such wanton and outrageous character as would constitute conduct that would warrant the allowance of punitive damages (Kirksey v. Jernigan, supra), and constitutes conduct that exceeds all bounds which could be tolerated by society, and is of a nature especially calculated to cause mental damage of a serious kind. Slocum v. Food Fair Stores of Florida, Inc., supra. The several incidents presented and relied on by the plaintiff as having caused him severe mental distress, in our view were not shown to be conduct equal to the flagrant character thereof which, as outlined above, is essential for recovery. The judgment is entitled to be affirmed on this alternative and separate ground. In re Estate of Yohn, 238 So.2d 290, 295 (Fla. 1970); Firestone v. Firestone, 263 So.2d 223, 225 (Fla. 1972); Deemer v. Hallett Pontiac, Inc., 288 So.2d 526, 528 (Fla.3d DCA 1974); Atlantic Plaza Partnership v. Daytona Sands, Inc., 357 So.2d 761 (Fla.1st DCA 1978).
The judgment is affirmed.
SCHWARTZ, Judge (specially concurring).
I agree with Judge Carroll's alternative conclusion that the evidence was insufficient, as a matter of law, to establish the elements of the tort of intentional infliction of severe mental distress, as they have been formulated by the courts and authorities which have recognized that cause of action. In short, neither the actions of the defendant, see Slocum v. Food Fair Stores of Florida, Inc., 100 So.2d 396 (Fla. 1958); Dowling v. Blue Cross of Florida, Inc., 338 So.2d 88 (Fla. 1st DCA 1976); Fletcher v. Florida Publishing Co., 319 So.2d 100 (Fla. 1st DCA 1975), separate holding quashed, 340 So.2d 914 (Fla. 1976); Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965), cert. dism., 183 So.2d 835 (Fla. 1966); Restatement of Torts, Second, § 46, comments d, g, i; nor the effect of those actions upon the mental well-being of the plaintiff, Harris v. Jones, 281 Md. 560, 380 A.2d 611 (1977); cf. Womack v. Eldridge, 215 Va. 338, 210 S.E.2d 145 (1974); Restatement of Torts, Second, § 46, comment j; were of the thoroughly horrendous character required to make out such a claim. Like the supreme court in Slocum, supra, I therefore do not and, were I writing for the court, would not reach the very thorny question of whether Florida does or would recognize the independent tort in a case to which the doctrine could properly be applied.[1]
NOTES
[1] The report stated:

"Because of his, if you will, monomania, I do not believe that this man would be completely safe to fly aircraft at this time. Men who are primarily preoccupied with such matters let everything else go and become completely consumed with their cause: Seeking justice for themselves. It seems amply clear to me that this 24-hour-a-day job is not compatible with clear headed, relaxed flying of an aircraft in conjunction with other crew members."
[1] I likewise find it unnecessary to decide the equally difficult question of whether the lower court lacked subject matter jurisdiction over the claim in question because of the alleged exclusive jurisdiction of the airline's System Board of Adjustment established under § 184 of the Railway Labor Act. 45 U.S.C. §§ 151-164, 181-188 (1970). On very similar facts, however, a divided court so held in Magnuson v. Burlington Northern, Inc., 576 F.2d 1367 (9th Cir.1978), cert. denied, ___ U.S. ___, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).