438 So.2d 58 (1983)
Antonio DOMINGUEZ, Appellant,
v.
EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a Foreign Corporation, Crawford and Company, a Foreign Corporation, and Millie Dirube, Appellees.
No. 81-1064.
District Court of Appeal of Florida, Third District.
August 30, 1983.
Rehearing Denied October 19, 1983.
*59 Magill, Reid, Kuvin & Lewis and R. Fred Lewis, Bernard P. Goldfarb, Miami, for appellant.
George, Hartz & McNary, Miami, Amy Shield Levine, Boca Raton, for appellees.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from an order which, inter alia, dismissed with prejudice one count of the appellant's complaint which sought damages for severe emotional distress alleged to have been caused by outrageous conduct unconnected to any other identifiable tort. We are called upon to decide whether we recognize such a cause of action and, if so, whether the appellant's allegations, taken as true at this stage of the proceedings, bring him within the cause of action.
A cause of action for "intentional infliction of severe mental or emotional distress," more appropriately called "outrageous conduct causing severe emotional distress,"[1] essentially involves the deliberate or reckless infliction of mental suffering on another, even if unconnected to any other actionable wrong. Restatement (Second) of Torts § 46 (1965). The elements of this cause of action are (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe.
Although the Florida Supreme Court has not yet definitively recognized the existence of this cause of action, it has not, on the other hand, definitively precluded courts of this state from doing so.[2]Ford Motor Credit Co. v. Sheehan, 373 So.2d 956, 960 (Fla. 1st DCA 1979).[3] Thus, unimpeded by the dictates of Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), the district courts of appeal have forged ahead, and the First, Fourth and Fifth Districts, joining the majority view in this country, have concluded that the cause of action exists. See Kirkpatrick v. Zitz, 401 So.2d 850 (Fla. 1st DCA 1981) (cause of action allowed); Lay v. Roux Laboratories, Inc., 379 So.2d 451 (Fla. 1st DCA 1980) (same); Ford Motor Credit Co. v. Sheehan, 373 So.2d at 960 (same); Dowling v. Blue Cross of Florida, Inc., 338 So.2d 88 (Fla. 1st DCA 1976) (same); Metropolitan Life Insurance Co. v. McCarson, 429 So.2d 1287 (Fla. 4th DCA 1983) (cause of action allowed); Boyles v. Mid-Florida Television Corp., 431 So.2d 627 (Fla. 5th DCA 1983) (cause of action recognized, but not properly pleaded); Habelow v. Travelers Insurance Co., 389 So.2d 218 (Fla. 5th DCA 1980) (cause of action recognized, but not applicable where outrageous conduct directed at another); Food Fair, Inc. v. Anderson, 382 So.2d 150 *60 (Fla. 5th DCA 1980) (cause of action recognized, but conduct not outrageous). The Second District has concluded otherwise. See Gmuer v. Garner, 426 So.2d 972 (Fla. 2d DCA 1982).[4]
We are of the opinion that the majority view is the correct one and conclude that we are not only free to adopt it, but are bound to do so by our own precedent. We recognize that in Gellert v. Eastern Air Lines, Inc., 370 So.2d 802 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 766 (Fla. 1980), and Sacco v. Eagle Finance Corp. of North Miami Beach, 234 So.2d 406 (Fla. 3d DCA 1970), this court stated that a cause of action for emotional distress based on outrageous conduct will lie only where it is coupled with other recognized tortious conduct. It appears, however, that in Sacco, we completely overlooked our earlier contrary precedent of Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965), cert. dismissed, 183 So.2d 835 (Fla. 1966), and in Gellert, although paying lip service to Korbin, we incorrectly categorized Korbin as being a case where the outrageous conduct was coupled with an independent tort. Korbin, however, in which the court held that a child's cause of action for emotional distress lay against a defendant who told the child of her mother's alleged adultery, is not, as was pointed out in Ford Motor Credit Co. v. Sheehan, susceptible of the reading given it in Gellert:
"Gellert suggests that Korbin did not permit an independent action for severe emotional distress since the action for emotional damages was connected with the slander of the child's mother. We find this analysis unpersuasive for two reasons: First, no cause of action was brought for slander, and second, the slander, if proved, would have resulted in a tortious act against the mother, not the child. The two causes of action must be considered separate and personal to two different people." 373 So.2d at 959 n. 3.
Therefore, in our view, Korbin, never overruled, receded from, discredited or adequately distinguished, is clear precedent for our holding today that a cause of action for emotional distress brought about by outrageous conduct lies notwithstanding the absence of another tort. Indeed, Korbin is the only authority in this court which is undiluted by an alternative holding that the conduct involved was not outrageous. Neither Gellert nor Sacco, as the courts there recognized, involved conduct which would qualify as outrageous, and thus, these cases could have been decided on that ground without reaching the question of the existence vel non of the cause of action.[5]See *61 Gellert v. Eastern Air Lines, Inc., 370 So.2d at 808 (Schwartz, J., specially concurring).
We turn now to the question of whether the allegations of Dominguez's complaint bring him within this cause of action.
The complaint alleges that in 1973, Equitable issued Dominguez a disability income policy of insurance which, in pertinent part, provided for $500 per month income for accidental total disability for the insured's lifetime. Shortly after the policy issued, Dominguez was involved in an automobile accident which "caused severe injuries to his body and extremities, including both eyes being knocked out of their sockets, brain damage, multiple large scars, psychiatric problems, periodic incontinence, paralysis of nerve in eye and other physical and mental problems, and mental injuries as well, which resulted in his total disability." Equitable paid Dominguez the disability income through August 1979 and then stopped making payments.
The heart of the complaint comes next:
"16. On or about April 21, 1980, the Defendant, EQUITABLE, sent an agent to the home of the Plaintiff in Miami, Florida. Said agent was working either directly for the Defendant, EQUITABLE, or indirectly for the Defendant by working for Defendant CRAWFORD & COMPANY, which was hired by the Defendant EQUITABLE to work on this case. Said agent was Millie Dirube, who, at all times relevant hereto was acting for either or both Defendants, in the course and scope of her agency and employment. Said Millie Dirube falsely represented to Plaintiff that she had received a letter from the eye doctor saying that his eye(s) were OK now and that Plaintiff was no longer disabled and falsely represented to Plaintiff that he was no longer totally disabled, that he was not longer covered under the policy, that the policy was no longer in force, that he had to sign a paper agreeing that no further payments were due under the policy, that it no longer covered him, that he was no longer entitled to receive benefits under the policy and that he was giving up the policy voluntarily. At the time said Millie Dirube made said misrepresentation she knew them to be false and they were in fact false and she made them with the intention and expectation and intention that Plaintiff be deceived and defrauded thereby and that the [sic] sign said paper and surrender the subject policy. Defendants well knew that Plaintiff was suffering both physical and mental total disability and was entitled to benefits under the policy and that the representations of Millie Dirube were false. The foregoing acts were all in violation of their fiduciary relationship and duty of good faith and in an effort to use their superior knowledge skill and position to take advantage of this debilitated Plaintiff. A relative of Plaintiff overheard and intervened at the last minute and prevented Plaintiff from signing the paper and surrendering the policy.
... .
"21. Defendant, EQUITABLE'S, acts and omissions set forth in this Complaint were done intentionally in order to inflict emotional distress upon the Plaintiff and/or were done in reckless disregard of the probability of causing emotional distress, and said acts and omissions did in fact cause severe and extreme emotional distress to the Plaintiff."
In our view, these allegations state a cause of action[6] and fall well within comments *62 e and f to Section 46 of the Restatement, which provide:
"e. The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests... .
"f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may be heartless, flagrant and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know... ."
The complaint alleges the defendants to be not only in a position to affect the plaintiff's interests, but actually having asserted their power by cutting off the plaintiff's disability payments without justification. It alleges further that the defendants were, as is obvious, aware of the plaintiff's disabilities and thus his susceptibility to emotional distress when they acted. This combination of the unjustified assertion of power by one party, and impotence of the other, would, we think, be viewed by a civilized community as outrageous and not as an indignity, annoyance or petty oppression for which the law affords no relief. Our conclusion that the conduct alleged is outrageous is amply supported by case law.
In Holmes v. Oxford Chemicals, Inc., 510 F. Supp. 915 (M.D.Ala. 1981), aff'd, 672 F.2d 854 (11th Cir.1982), the court found the defendant's conduct to be such as to justify a jury to find, as it did, that the conduct fell on the side of outrage. There the defendant, the plaintiff's employer, was aware that the plaintiff had suffered a severe heart attack permanently disabling him from performing any work. Thereafter, Consolidated (Oxford's parent company) paid to the plaintiff monthly disability payments of $500 for four months, at which time it reduced the monthly payment to $49.10, advising the plaintiff to seek the balance from the Social Security Administration. Under Consolidated's disability plan, a disabled employee was not required to seek Social Security benefits, and although the plan allowed a reduction in disability payments by the amount of Social Security benefits actually received by an employee, it did not authorize the employer to make such a reduction in anticipation of Social Security benefits that an employee might receive. The court concluded:
"Defendant's administrator testified that he routinely cut the required payments to disabled persons such as plaintiff to force them to be diligent in seeking Social Security payments without making any inquiry as to whether they were receiving such benefits. He testified that he did this in order to put `the onus' on the disabled employee to take all steps necessary to get his Social Security benefits. Consolidated reasonably knew that plaintiff was distraught over his medical condition and permanent disability prior to its action of cutting plaintiff's disability check to $49 per month. The administrator acknowledged that he had no basis for believing that plaintiff had other income or assets, and he agreed that plaintiff could hardly survive on $49 per month. Plaintiff argued persuasively that for defendant to do this to a man whom it knew had a severe heart condition and was already distraught over his physical and financial condition was outrageous. Predictably, plaintiff suffered severe depression and required psychiatric treatment for his helpless financial condition imposed by defendant's deliberate and wrongful act of denying him the monthly income to which he was admittedly entitled." 510 F. Supp. at 918.
In Strader v. Union Hall, Inc., 486 F. Supp. 159 (N.D.Ill. 1980), the plaintiff-employee suffered a severe stroke, and after some resumption of work on a part-time basis was terminated from employment because of his disability. For about a month thereafter, the company's insurer, Travelers Insurance Company, continued to pay for *63 the plaintiff's out-patient therapy. Then, according to the court:
"In June, 1974, plaintiff's wife contacted a claims agent to discuss continuation of payments to her husband. The agent told Mrs. Strader that her husband was ineligible for payments since he no longer worked at Union Hall. When Mrs. Strader offered to provide evidence that her husband had been totally disabled at the time he left the employ of Union Hall, the agent told her not to submit the information. A friend of the Strader family who sought to intercede on plaintiff's behalf fared little better. In response to a request explaining the reason for the termination of benefits, Travelers stated that any time an employee was terminated  for whatever reason  policy benefits were terminated as well.
"The plaintiff alleges that this information was false, and that since then plaintiff has learned that benefits may continue after termination of employment if the employee is totally disabled at the time of termination. Strader claims that Travelers failed to conduct an investigation to determine whether in fact he was disabled at the time of his discharge; indeed, he alleges that Travelers' handling of his case was so negligent and reckless that his file actually was lost. As a result of the termination of payments by Travelers, plaintiff allegedly was unable to obtain physical therapy for more than a year and one half. During this period his mental  as well as physical  condition allegedly deteriorated seriously. Because he had lost hope for the future, his mental state became one diagnosed as moderately severe depression." 486 F. Supp. at 162-63.
The court concluded that a cause of action for "intentional infliction of emotional harm" was stated against Travelers:
"Here, the defendant insurer allegedly failed to investigate the merits of plaintiff's claim, and misrepresented the nature of his insurance coverage. This is precisely the type of abusive behavior by an entity with the power to affect the interests of another that gives rise to a finding of extreme and outrageous conduct. (citations omitted). The emotional distress allegedly suffered by plaintiff is more than mere fright or worry. Plaintiff herein allegedly was a very sick man, dependent upon the insurance benefits for the continuation of his rehabilitation regimen. The unwarranted termination of those benefits no doubt would be severely distressing to a reasonable man in the position of the plaintiff. Moreover, as alleged, the conduct of Travelers clearly states a claim for reckless conduct. Since this conduct arose in the context of an insurance policy where the `very risks insured against presuppose that ... the beneficiary might be in difficult circumstances,' (citation omitted), Travelers knew or should have known that severe distress was substantially certain to result. Finally, it is clear that plaintiff's allegations attribute his severe mental distress to the conduct of Travelers. Thus, the Court believes that the foregoing facts are sufficient to state a claim for intentional infliction of emotional harm." Id. at 163.
See also Eckenrode v. Life of America Insurance Company, 470 F.2d 1 (7th Cir.1972); Fletcher v. Western National Life Insurance Co., 10 Cal. App.3d 376, 89 Cal. Rptr. 78 (1970). Cf. Steadman v. South Central Bell Telephone Co., 362 So.2d 1144 (La. App. 1978) (where plaintiff-employee became disabled and terminated employment, and defendant's agent, in disregard of her doctor's warnings, contacted her for the purpose of retrieving key card and identification card belonging to employer, to which employer was indisputably entitled, no cause of action for emotional distress caused by conduct stated).
Since the question of what is outrageous conduct is unrelated to the question of whether a cause of action exists for emotional distress caused by outrageous conduct unconnected to another tort, cases which identify conduct like that alleged in the present case to be sufficiently outrageous to warrant recovery for infliction of emotional distress where connected to another *64 tort are equally persuasive. Thus, in Miller v. Mutual of Omaha Insurance Company, 235 So.2d 33 (Fla. 1st DCA 1970), the court reversed a judgment notwithstanding a jury verdict for the plaintiff on a count of intentional infliction of emotional distress. The cause of action in Miller was connected to the tort of unlawful interference with the plaintiff's right to possession of a hospital insurance policy which had been issued by the defendant.[7] The appellate court held that Mrs. Miller was entitled to recover on this set of facts:
"The plaintiff Mrs. Miller testified at the trial that [after she had been hospitalized with Addison's Disease and the insurance company refused to pay any of her medical bills] thereafter the defendant Leo R. Edgerton, an agent of the defendant insurer, came to the Miller home and said to her: `I am from Mutual of Omaha, and I have some bad news for you,' or something to that effect, `* * * Mutual of Omaha is not going to pay your hospital * * *. You knew good and well that you had that when you taken out the policy. * * *' that he was talking `real loud and snotty like' and said `What do you think you are trying to pull * * *. There have been other people around here that tried to pull the same thing, but they didn't get by with it. Mutual of Omaha is not going to let them get by with it. * * *' She further testified that she then said, `I don't see why they are not going to pay it,' and Edgerton replied, `"You knew you had that before you taken the policy. * * *"', and she said, `I didn't knew it. I had never heard of such a thing in the world as Addison's Disease.' Mrs. Miller further testified that Edgerton asked to see the policy in question, stuck it in his side pocket, started out of the door and said sarcastically that he hoped that Mrs. Miller got along all right. Mrs. Miller did not give Edgerton permission to take the policy. She then went back in the room and cried, being `real sick and upset at the time,' mostly about the way Edgerton had talked with her. She did not sleep that night and the next morning she was taken to the hospital. The defendant insurer had never returned her policy to her.
"The treating physician at the hospital testified that Mrs. Miller was nervous and upset and could not sleep because of recent events." 235 So.2d at 35.
See Continental Casualty Co. v. Garrett, 173 Miss. 676, 161 So. 753 (1935) (affirming recovery for insured for physical injury caused by emotional distress where insurer's agent accused insured of lying about illness and defrauding insurance company; actionable tort found to be invasion of right of homeowner to be free from hostile intrusion); see also Interstate Life & Accident Co. v. Brewer, 56 Ga. App. 599, 193 S.E. 458 (1937); National Life & Accident Ins. Co. v. Anderson, 187 Okla. 180, 102 P.2d 141 (1940).
Accordingly, the trial court's order dismissing the plaintiff's complaint for failure to state a cause of action is reversed and the cause remanded for further proceedings.
Reversed and remanded.
NOTES
[1] We think describing the tort as "the intentional infliction of severe mental or emotional distress" is somewhat misleading. Such a description erroneously suggests that the defendant intended to inflict severe mental or emotional distress when, in fact, all that need by shown is that he intended his specific behavior and knew or should have known that the distress would follow. See Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA 1979); Restatement (Second) of Torts § 46 (1965).
[2] Federal courts looking to Florida law have arrived at various conclusions about where this state stands on the issue. Often citing to the same cases, it has been said that Florida recognizes the cause of action, see, e.g., Singleton v. Foreman, 435 F.2d 962, 971 (5th Cir.1970); does not, see, e.g., Forde v. Royals, Inc., 537 F. Supp. 1173, 1175 (S.D.Fla. 1982); or has not made up its mind, see, e.g., Mundy v. Southern Bell Telephone & Telegraph Co., 676 F.2d 503, 505 (11th Cir.1982).
[3] When first presented with a certified question asking whether the cause of action is to be recognized in Florida, the court provided no answer. See Ford Motor Credit Co. v. Sheehan, 379 So.2d 204 (Fla. 1979) (dismissing certiorari). Recently, the question has again been posed to the court. See Gmuer v. Garner, 426 So.2d 972 (Fla. 2d DCA 1982).
[4] By its approval of the trial court, which, in turn, sided with Gellert v. Eastern Air Lines, Inc., 370 So.2d 802 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 766 (Fla. 1980), as announcing the correct rule, the Second District in Gmuer appears not to recognize the cause of action "when not incident to or connected with an independent tort." However, confusion about the meaning of Gmuer derives from its affirmance of the trial court's order which, inter alia, stated:

"`The Sheehan case does not really present a conflict [with Gellert] on a close reading. Sheehan's cause of action was sustained on a pure application of Section 46 of the Restatement. [In Sheehan], the allegations of the creditor's misconduct were so patently outrageous and repugnant as to support a cause of action on essentially the same criteria applied in Gellert.'" 426 So.2d at 973.
But the consistency between Sheehan and Gellert lies only in that both courts applied the same criteria for outrage: in Sheehan, the conduct was found to be outrageous; in Gellert, it was not. Insofar as permitting the cause of action when the conduct is found to be outrageous, Sheehan and Gellert are hopelessly in conflict.
[5] Similarly, the progeny of Gellert and Sacco do not adversely impact Korbin. In Garrison v. City of Homestead, 408 So.2d 823 (Fla. 3d DCA 1982), the court, without discussion of the facts, affirmed a dismissal of the complaint citing to Lay v. Roux Laboratories, Inc., 379 So.2d 451 (Fla. 1st DCA 1980); Dowling v. Blue Cross of Florida, Inc., 338 So.2d 88 (Fla. 1st DCA 1976), and Gellert. Since Lay and Dowling recognize the cause of action but hold that the conduct was not outrageous, Garrison can only mean that no outrageous conduct was alleged. In Friedman v. Mutual Broadcasting System, Inc., 380 So.2d 1313 (Fla. 3d DCA 1980), this court simply held the conduct was not outrageous without reaching the question of whether a cause of action exists. Finally, we note that this court's holding that damages for mental distress are not recoverable in a negligence action in the absence of impact, see Cadillac Motor Car Division, General Motors Corporation v. Brown, 428 So.2d 301 (Fla. 3d DCA 1983), is unrelated to the present case where intentional conduct is alleged.
[6] On appeal, the defendants have argued that the allegations of severe emotional distress, an element of the tort, are not sufficiently detailed so as to state a cause of action. This argument was not preserved in their motion to dismiss, and had it been, would merely have supported a dismissal with leave to amend. If, upon discovery, it is indisputably revealed that severe emotional distress did not result from the defendants' actions, the defendants would be entitled to summary judgment.

The defendants also argue that since Dominguez signed nothing and did not surrender the policy, there is no damage and no cause of action. The argument is specious. While the defendants may not have accomplished their goal, they may still have brought about emotional distress.
[7] Ironically, had the defendants in the present case succeeded in retrieving Dominguez's insurance policy so as to commit the connected tort of unlawful interference with Dominguez's right of possession, we could have reversed the dismissal of Dominguez's complaint on the authority of Miller alone. Yet, absent our recognizing that a cause of action for emotional distress exists even if unconnected to any other actionable wrong, Dominguez, the victim of equally outrageous conduct to that wrought upon Mrs. Miller, would be precluded from recovery by the happenstance that the insurance agent did not succeed in getting the policy.