Charles Wade HOLMES, Plaintiff,

v.

OXFORD CHEMICALS, INC., a division of Consolidated Foods Corporation; Consolidated Foods Corporation, Defendants.

Civ. A. No. 80–19–N.

United States District Court, M. D. Alabama, N. D.

March 27, 1981.

Jere L. Beasley, Frank M. Wilson, Mont-
gomery, Ala., for plaintiff.

Jones, Murray, Stewart & Yarbrough, D. Coleman Yarbrough, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

The above styled cause is now before the Court on several motions filed by various parties in this law suit. Each of these motions will be considered individually by the Court.

██ On March 9, 1981, defendants filed several objections to plaintiff's bill of costs. After examining plaintiff's cost bill, the Court is of the opinion that several items submitted by plaintiff should be disallowed. Donald Bozeman and Robert Guillot did not testify at the trial of this matter. No fee may be taxed for these individuals. 10 Wright & Miller, *Federal Practice and Procedure,* § 2678, at n. 31 (1973). Plaintiff offered no depositions in trial. The cost of depositions may not, therefore, be taxed as court costs. Long distance telephone costs are not taxable as part of the court costs. Finally, plaintiff's expert witnesses are entitled only to the regular statutory witness fees. The fees of Drs. Finklea and Prescott submitted as "other costs" are not allowed. Accordingly, plaintiff is allowed costs in the total amount of $386.42 rather than the amount claimed.

Defendant Consolidated Foods Corporation filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on February 18, 1981. Upon consideration of defendant's motion and supporting brief, the Court is of the opinion that defendant's motion should be denied.

Defendant Consolidated offered several grounds in support of its motion: first, that the verdict was contrary to the great preponderance of the evidence and contrary to the applicable law; second, that the facts offered in evidence at the trial did not constitute "the tort of outrage" as a matter of law; and finally, that the Court erred in overruling defendant's objection to plaintiff's closing rebuttal arguments concerning alleged damages suffered by plaintiff.

██ As to defendant's first and second points, the Court agrees that this case presents a close question. The tort of "outrage" has only recently been recognized by the Supreme Court of Alabama. *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.S.Ct.1980). Even in this decision recognizing the cause of action for the first time, the Alabama Supreme Court found that the facts presented in that particular case did not warrant a recovery by plaintiff. As defendant Consolidated Foods correctly points out in its brief, the Alabama Supreme Court has not considered a case since its recognition of the tort of outrage where the facts were sufficiently extreme to constitute the tort of outrage.

The dissenting opinion in the *Inmon* case gave as its reason for not recognizing the tort of outrage its belief that the new cause of action "has no parameters." With no Alabama cases pricking out the boundary for the newly recognized tort of outrage, this Court finds it especially difficult to decide on which side of the line this case should fall. The difficulty of the problem, however, does not relieve this Court of the task of making the decision. This Court is persuaded, after reviewing the evidence presented to the jury, that if the jury accepted all the evidence offered by the plaintiff, it was within the prerogative of the jury to find that the actions of defendant Consolidated Foods constituted a tort of outrage. In reaching this decision, the Court emphasizes the standard it must apply in considering a motion for judgment notwithstanding the verdict. As stated by the Fifth Circuit Court of Appeals: "[A] judgment notwithstanding the verdict should not be granted unless under the evidence, together with all inferences that can be reasonably drawn therefrom, there can be but one reasonable conclusion as to the proper judgment." *Continental Ins. Co. of New York v. Sherman,* 439 F.2d 1294 (5th Cir. 1971).

The evidence showed that plaintiff had a severe heart attack on or about April 18, 1979. Defendant Consolidated was aware of the heart attack and that plaintiff's

heart condition was so crippling that he was permanently disabled from performing any work. Between the time of the first severe heart attack and July 1979, Consolidated was aware that plaintiff had undergone further hospitalization and surgery for his condition.

■ Although plaintiff calculated that he was entitled to disability benefits of $780 per month, representing 60 per cent of his income as calculated by plaintiff for the months he worked for Consolidated, Consolidated calculated that plaintiff was entitled to $500 per month. On or about November 15, 1979, plaintiff received his first monthly check from defendant in the amount of $500. Plaintiff protested that this amount was incorrect. Although the Court has found that plaintiff was entitled to $730.40 per month as disability benefits, Consolidated had a good faith, reasonable belief that the sum owed was $500 per month, and no prejudice should attach to Consolidated insofar as the "tort of outrage" is concerned for its calculation of plaintiff's benefits at $500 monthly rather than a larger sum.

On or about March 11, 1980, without any prior notice to plaintiff, Consolidated reduced plaintiff's monthly check from $500 to $49.10, advising plaintiff to seek the balance of the $500 from the Social Security Administration. Consolidated had no basis for believing that plaintiff was receiving Social Security benefits. The administrator of Consolidated's disability program testified that approximately one-half of the requests for Social Security disability payments, even from employees of his company that had been adjudged fully disabled by the company, were turned down—at least initially—by the Social Security Administration.

Under its disability plan, Consolidated was entitled to reduce plaintiff's disability check by the amount of benefits plaintiff received from the Social Security Administration. Defendant's disability plan, however, did not require plaintiff to seek Social Security benefits, and it clearly did not authorize defendant to reduce plaintiff's monthly check in anticipation that plaintiff *might* at some later date receive Social Security benefits. At the time of trial, plaintiff was still not receiving Social Security benefits, and on April 11, 1980, when Consolidated was advised that plaintiff had been denied Social Security benefits, it resumed plaintiff's payments at $500 per month, together with a lump sum reimbursement of the amount previously withheld.

Defendant's administrator testified that he routinely cut the required payments to disabled persons such as plaintiff to force them to be diligent in seeking Social Security payments without making any inquiry as to whether they were receiving such benefits. He testified that he did this in order to put "the onus" on the disabled employee to take all steps necessary to get his Social Security benefits. Consolidated reasonably knew that plaintiff was distraught over his medical condition and permanent disability prior to its action of cutting plaintiff's disability check to $49 per month. The administrator acknowledged that he had no basis for believing that plaintiff had other income or assets, and he agreed that plaintiff could hardly survive on $49 per month. Plaintiff argued persuasively that for defendant to do this to a man whom it knew had a severe heart condition and was already distraught over his physical and financial condition was outrageous. Predictably, plaintiff suffered severe depression and required psychiatric treatment for his helpless financial condition imposed by defendant's deliberate and wrongful act of denying him the monthly income to which he was admittedly entitled.[1]

Under Alabama law, the jury was charged to assess such damages as would deter this defendant and others from doing this or similar acts in the future, if the jury

---

1. Plaintiff further argued that defendant cut plaintiff's benefits because plaintiff had challenged the monthly figure calculated by defendant. Whether this was an aggravating circumstance is not essential to the Court's decision in this case. It was admittedly done without any legal basis and was wrongful.

believed that defendant had committed the tort of outrage. Defendant's administrator conceded that he had been following this practice for years of cutting off benefits to disabled people without any regard to whether they were in fact receiving Social Security benefits. As already noted, defendant's agreement with its employees entitled it to make such reductions only if persons were actually receiving Social Security benefits.

In the *Inmon* case, the Supreme Court of Alabama refers with approval to the Restatement of Law of Torts, to aid in determining when the facts warrant a finding of the tort of outrage. At page 75 of § 46 of the Restatement, the following statement is found:

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

■ It is the opinion of this Court that a jury could find defendant's deliberate and wrongful act of reducing the benefits of this permanently disabled victim of a heart attack to $49 a month was callous in the extreme and "was utterly intolerable in a civilized society." *American Road Service Co. v. Inmon, supra.* The damages awarded of $25,000 were within the jury's discretion and were not excessive in light of defendant's acts and the medical testimony offered as to plaintiff's emotional suffering.

This is not a case where a defendant has insisted "on his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Sec. 46, Comment (g), Restatement of Torts (1948), quoted in *American Road Service Co. v. Inmon, supra.* Under the plain language of Consolidated's disability agreement with its employees, Consolidated had no right to slash plaintiff's disability income in the hope that such drastic action might force plaintiff to seek Social Security benefits.

■ Consolidated also argues that the Court erred in overruling defendant's objection to plaintiff's rebuttal arguments on damages. Defendant argues that plaintiff's closing rebuttal arguments were beyond the scope of defendant's closing argument and therefore improper. Defendant offers no authority in support of this proposition. The Court finds defendant's contention without merit.

■ Defendants filed a motion for reconsideration of the Court's decision on Count I of plaintiff's complaint. Plaintiff also filed a motion to amend the Court's judgment on Count I. As might be expected, defendants seek a lower per month figure, and plaintiff, a higher monthly payment. The Court remains unconvinced by the arguments of either party. The Court computed the amount due plaintiff by taking plaintiff's weekly draw and subtracting therefrom plaintiff's expenses projected over the full period that he received a weekly draw. While arguments may be made for different approaches, this method of calculation seems fair and reasonable and was arrived at by the Court only after a consideration of all of the dealings between the parties. For this reason, both plaintiff's motion to amend and defendants' motion for reconsideration will be denied.

Finally, plaintiff's attorney has filed a motion for the allowance of attorney fees by the Court. Plaintiff's attorney contends that he is entitled to $18,500 as compensation for the services rendered to his client in this law suit. The Court has reviewed the time sheets submitted by plaintiff's attorney, specifically in light of the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Consideration of this decision, together with the facts of the instant case, leads the Court to conclude that plaintiff's attorney is entitled to $4,500.00 in attorney's fee.

■ The plaintiff in this action sued the defendants on two counts. The first arises under 29 U.S.C. §§ 1001 et seq., commonly

known as the Employees Retirement Income Security Act. The second was the tort of outrage, discussed above. Title 29 U.S.C. §§ 1001 et seq., specifically § 1132(g), confers the power upon the district court to award attorney fees. The attorney fees provision expressly provides:

> In an action *under this subchapter* by a participant, beneficiary, or fiduciary, the Court in its discretion, may allow a reasonable attorney's fee and costs of action to either party. (emphasis added)

In light of this statutory language, it is the opinion of the Court that plaintiff's attorney should be awarded attorney fees by the Court only for the work done on plaintiff's federal claim.

Plaintiff's attorney did not divide his hours between the two claims. Dividing the work of plaintiff's attorney in such a way with any exactness may not be possible at this juncture. Under these circumstances, the Court finds it fair and reasonable to divide plaintiff's attorney's time equally between the two claims. Plaintiff's attorney claims a total of 116.5 hours. Assigning one-half of the claimed hours to work on plaintiff's federal claim gives plaintiff's attorney approximately 60 hours. This claim for 60 hours must, in turn, be evaluated in light of *Johnson v. Georgia Highway Express, Inc., supra.*

■ The Court makes the following specific conclusions in light of the *Johnson* factors:

(1) *Time and labor involved*: As stated above, the affidavit from plaintiff's attorney states that he expended 116.5 hours in representing his client in this law suit. The Court accepts the accuracy of plaintiff's attorney's affidavit.

(2) *Novelty of question*: The claim on which the Court awards attorney fees was not one of first impression. It involved the application of general contract principles to a dispute between plaintiff and defendants over plaintiff's disability policy. This factor weighs against the award of any unusually large fee.

(3) *Skill required*: The relative strength of plaintiff's claim, the complexity of the issues involved, and the quality of opposing counsel's representation all made skillful representation by plaintiff's attorney necessary for the successful prosecution of this law suit.

(4) *Preclusion of other employment*: Plaintiff's attorney's representation of his client did not preclude plaintiff's attorney from accepting other employment.

(5) *Customary fee*: The stated fee of plaintiff's attorney of $75 an hour prior to November 1, 1980, and $90 an hour thereafter is accepted as his customary charge. The Court notes that an hourly rate of $75 was the hourly rate charged by plaintiff's attorney at the time he first met with plaintiff and continued to be his hourly rate for over ten months after the filing of plaintiff's complaint. It seems appropriate in this case to consider no greater fee than that charged at the time this employment was undertaken. A fee of $75 per hour is at the upper level of fees that have been heretofore allowed by this Court.

(6) *Amount involved and results obtained*: Plaintiff recovered on both counts of his complaint. As a result of this law suit, the amount to which plaintiff is entitled under his disability contract with defendants rose significantly. Plaintiff also effected a substantial recovery under Count II of his complaint, and plaintiff's attorney is entitled to a substantial fee from this recovery, presumably a percentage of the recovery.

(7) *Experience, reputation and ability of attorney*: Although plaintiff's attorney left the private practice of law for eight years to serve in state government, his experience as a trial attorney in federal court is nevertheless significant. He has demonstrated skill and ability in representing clients in a variety of cases before this Court.

(8) *Undesirability of the case*: The Court sees no basis for concluding that the legal community would view this as an unattractive law suit.

(9) *Nature and length of the professional relationship with the client*: There is no indication that plaintiff's attorney has any relationship with plaintiff other than that pertaining to this particular law suit.

(10) *Awards in other cases*: Awards of attorney fees in similar cases have been lower. However, plaintiff's attorney submitted affidavits from other attorneys attesting that an attorney's fee of $75 to $90 per hour was reasonable. The Court finds $75 per hour a liberal but reasonable fee in this case.