**Calvin Roderick CARMICHAEL,
Plaintiff-Appellant,**

v.

**BIRMINGHAM SAW WORKS,
Defendant-Appellee.**

No. 85–7665.

United States Court of Appeals,
Eleventh Circuit.

April 13, 1987.

Robert L. Wiggins, Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff-appellant.

James W. May, Gulf Shores, Ala., for defendant-appellee.

Before HILL and HATCHETT, Circuit Judges, and THOMAS *, Senior District Judge.

PER CURIAM:

In this Title VII employment discrimination case, we review the district court's ruling on attorney's fees. Finding that the district court failed to follow the mandate

---

* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

of this court in a prior appeal, we vacate the judgment and remand the case.

## Procedural History

This is the second appeal arising out of a claim of racial discrimination filed by Calvin Roderick Carmichael against Birmingham Saw Works (Birmingham Saw). Carmichael, a black man, filed this action on February 14, 1979, alleging disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1976 and Supp. V. 1981). The district court rejected Carmichael's claim of discrimination in hiring and promotions, but found that Birmingham Saw violated Title VII by starting him at a lower wage than that paid to white beginning employees. After a hearing, the district court awarded Carmichael $1,211.50, plus interest, in damages, and $5,400 in attorney's fees. On appeal, we remanded for further proceedings on the hiring and promotion claims. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir.1984) (*Carmichael I*). We also concluded that remand was appropriate on the attorney's fee issue because the district court failed to identify the hours it disallowed and failed to explain why it disallowed them. *Carmichael I* at 1139.

After retrial, the district court ruled for Carmichael on the remanded claims and entered a judgment awarding him $20,-513.69 in backpay. Carmichael filed a motion for attorney's fees and expenses, and the district court set the matter for hearing before a United States Magistrate. The court also entered an order requiring that Carmichael set forth an itemized statement of fees and expenses within thirty days, and requiring that Birmingham Saw raise any objections to Carmichael's statement within twenty days. Pursuant to the order, Carmichael timely filed an itemized statement of fees and expenses, but Birmingham Saw did not file an objection. At the hearing, three lawyers testified that they had examined the hours Carmichael's attorneys expended in the case and found them to be reasonable. Birmingham Saw did not dispute their testimony. On the basis of this evidence, the magistrate found: (1) that the time and labor required to handle the case was not an issue because Carmichael presented a detailed affidavit and Birmingham Saw did not respond; (2) that Carmichael's attorneys were exceptionally skilled in Title VII practice, and this skill should be a factor in determining the hourly rate; (3) that the hourly rate from 1979 through 1981 was $75 per hour, from 1982 through July, 1984, $90 per hour, from July, 1984, through March 30, 1985, $100 per hour, and from March 30, 1985, to the present, $110 per hour; (4) that the fee was contingent; (5) that the base noncontingent fee should be enhanced due to delay; and (6) that excellent results were obtained. Based on these findings, the magistrate recommended an unenhanced lodestar amount of $25,834.[1] The magistrate recommended that the lodestar amount be enhanced to $31,042.40 due to the contingency arrangement and delay. The magistrate filed his Report and Recommendation on August 20, 1985; it provided that objections had to be filed within ten days. No objection was filed. Notwithstanding Birmingham Saw's failure to object to the magistrate's report and recommendation, the district court reduced the recommended fee by 25–percent to $23,-282.25, and held that it found no basis for enhancing the award.

## Discussion

On this appeal, Carmichael contends that the 25–percent reduction in compensable hours expended was improper because the district court failed to identify the hours disallowed and failed to explain why it disallowed them as this court mandated on the prior appeal. Carmichael also contends that the district court erred by refusing to

---

1. The magistrate used the following matrix to arrive at the lodestar:

| Year | Hours | Hourly Rate | Unenhanced Fee |
|---|---|---|---|
| 1981 | 43.4 | $ 75 | $ 3,255 |
| 1982 | 86.2 | $ 90 | $ 7,758 |
| 1983 | 23.9 | $ 90 | $ 2,151 |
| 1984 | 105.6 | $100 | $10,560 |
| 1985 | 21.1 | $100 | $ 2,110 |
| Total Lodestar | 280.2 | N/A | $25,834 |

enhance the award to account for delay. Birmingham Saw contends that the district court adequately explained its disallowance of hours and articulated legitimate reasons for refusing to enhance the award.

## A. *Reduction in Compensable Hours Expended*

On the first appeal in this case, we vacated and remanded because we found that the district court failed to adequately explain how it evaluated the factors it was required to consider. In remanding the case to the district court for further proceedings, we noted that, without such explanations, the district court's findings were impossible to review:

> The district court is of course empowered to disallow hours it finds excessive or unnecessary. But '[i]f the court finds the number of hours excessive, it should identify the hours disallowed and explain why it is disallowing them.' *Fitzpatrick v. Internal Revenue Service*, 11 Cir. 1982, 665 F.2d 327, 332. Otherwise, we have no way of reviewing the decision. *Johnson v. University College*, 11 Cir. 1983, 706 F.2d 1205, 1207–08, *cert. denied*, 1983, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684.

*Carmichael* at 1137.[2]

The district court acknowledged its understanding of our directions to identify the hours disallowed; it refused to do so because, in its view, such a "burden" was "impracticable." After specifically identifying some "questionable" hours, the district court concluded that "a degree of excessiveness permeates all the claimed hours." Accordingly, the district court reduced the magistrate's recommended fee award by 25–percent, stating that its action was based on "common sense and twenty-three years as a lawyer and five and a half years as a judge."

We find the district court's "explanation" inadequate and its order insufficient; we are no more able to review the disallowance of attorney's fees based on judicial intuition, than we are able to review an award based on nothing at all. Given the *Fitzpatrick v. Internal Revenue Service*, standard, we can seldom, if ever, countenance an across-the-board reduction as ordered by the district court in this case.

It is difficult to understand why the district court insisted on reducing the award in this case without adequate explanation when Birmingham Saw never contested the award—even when explicitly offered the opportunity to do so.[3] As we stated in *King v. McCord,* 707 F.2d 466, 468 (11th Cir.1983), "A trial judge cannot substitute his own judgment for uncontradicted evidence, without explanation and record support." (*Citing Marable v. Walker*, 704 F.2d 1219 (11th Cir.1983) ("this court has consistently required district courts to conduct evidentiary hearings [citation omitted] and to enter specific findings of fact and conclusions of law in rendering fee awards where disputes cannot be otherwise resolved."))

Thus, we are compelled to vacate and remand once again. On remand, the district court shall enter an order adopting the magistrate's fee award recommendation.

---

**2.** On the first appeal we remanded "reluctantly" because we felt Carmichael's attorneys contributed to the district court's deficiencies by failing to set forth a precise and explicit fee request. On remand, however, Carmichael's attorneys entered a detailed affidavit in support of attorney's fees and meticulously itemized the hours expended. Thus, Carmichael, at least, has heeded our admonition to "produce a record of adequate detail to permit meaningful and efficient review." *Carmichael I* at 1139.

**3.** The district court disagreed with the magistrate's conclusion that Birmingham Saw did not contest the award. At the conclusion of the hearing, Birmingham Saw's attorney stated:

> I would ask the court to temper your decision with reasonableness ... I have no idea that the court would award the total amount that Mr. Wiggins asks for because, as I say, I believe it's outrageous.... I am sure the court understands the position of unsuccessful defendants in such cases as this where it is difficult and it is distasteful to contest an attorney's fee application.

In our view, however, Birmingham Saw cannot be said to have "contested" the award based on this general statement. Contesting in this context entails putting on evidence to rebut the claimed entitlement to compensation.

The appellant urges that we adjust the lodestar amount upward due to the delay in its payment. We decline to do so.

REVERSED and REMANDED

THOMAS, Senior District Judge, specially concurring:

I reluctantly concur in this case, only because Judge Probst did not follow the guidelines set out by the Eleventh Circuit in the previous reversal of this case. But for this fact, I am completely in accord with Judge Probst's opinion.

Attorney's fees generally, and particularly in Title VII cases, have gone out of sight. A person, either private or corporate, cannot indulge in the luxury of litigation. It is time the courts take appropriate action.

Judge Probst in his opinion states that his action was based on "common sense and 23 years as a lawyer and five and one-half years as a Judge." The majority opinion has this to say: "We find the district court's 'explanation' inadequate and its order insufficient; we are no more able to review the disallowance of attorney's fees based on judicial intuition, than we are able to review an award based on nothing at all." If this case involved the question of time and effort necessary to construct a building, repair an automobile, or the like, I would agree with the above. But, on the contrary, this involves a subject that courts frequently deal with, and certainly the Court should be allowed to call upon past experience in evaluating the same. This applies not only to a trial court, but to an appellate court.

The opinion discusses the fact that the defendant in this case did not make any objection to the attorney's hours claimed, nor the hourly rate, commenting on the fact that three attorneys testified as to the reasonableness of both issues. Any lawyer would have no difficulty in locating three of his fellow lawyers to substantiate the reasonableness of his or her claimed fee. This is not meant as an indictment of the Bar as a whole but no lawyer is going to request his fellow to testify in his behalf if he does not have reason to believe that the lawyer will accommodate. He is certainly not going to ask one that he thinks will not accommodate.

The case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), sets out a detailed formula for the fixing of fees. The courts would better themselves and the public by using common sense based on experience than following to the letter a printed formula.

The law of the Eleventh Circuit as it presently stands gives a losing party in a Title VII case absolutely no chance of contesting the prevailing party's attorney's fees. For to do so merely increases the fee. I am not surprised by the actions of the defendant in this case.

The plaintiff in this case was finally awarded a verdict of $20,513.69. To allow this party's attorney a fee of $31,042.40, is not realistic. Judge Probst had every reason to cut it to $23,282.25, and even at that it is too high. I would further comment that Judge Probst, who has a better feel of this case than any other judge, was quite appropriate in his comment when he stated: "A degree of excessiveness permeated all of the claimed hours."

With reluctance, I concur in the majority opinion.

HATCHETT, Circuit Judge, concurring in part and dissenting in part:

Although I join wholeheartedly in the majority opinion regarding the fee award, I dissent from the majority's decision not to order the district court to adjust the lodestar amount upward due to delay.

Citing *Johnson v. University College,* 706 F.2d 1205 (11th Cir.1983), we stated on the previous appeal that "the district court should consider whether to take into account the long delay in any payment to the plaintiff or his counsel (it has been five years since this case was filed)." *Carmichael I* at 1138. In *Johnson* we stated that

delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one. As a result, district courts should take into account inflation and interest,

perhaps by adjusting the contingency factor to reflect delay, not just contingency, or perhaps by compensating at current, not historical, rates. *See Copeland v. Marshall,* 641 F.2d 880, 893 (D.C. Cir.1980) (en banc); *Northcross v. Board of Education,* 611 F.2d 624, 640 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). We do not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken.

*Johnson,* 706 F.2d at 1210–11. After careful review, the magistrate recommended that the lodestar amount be adjusted upward due to the delay in its payment. The district court rejected the recommendation without explanation. In light of our admonition on the previous appeal and directive in *Johnson,* I would hold that, in so doing, the district court abused its discretion. The district court's refusal to adjust the lodestar amount to reflect the delay in receipt of the award is especially puzzling when contrasted with its treatment of Carmichael's backpay. The district court determined that Carmichael's backpay should be calculated in accordance with Memorandum GC–84–8 issued by the National Labor Relations Board Office of the General Counsel. This memorandum ordered that interest on backpay and other monetary awards be computed at the adjusted prime rates used by the Internal Revenue Service in calculating interest on the under payment or over payment of taxes. Under this authority, the rates were set at 12–percent in 1981, 20–percent in 1982, 13.5–percent in 1983, 11–percent in 1984, and 11–percent in 1985. It is difficult to discern why the district court would, in effect, provide for adjustments in Carmichael's backpay due to delay, but fail to do the same for Carmichael's attorney.

The magistrate recommended adjusting the award by using an hourly rate in excess of that which would have been applicable without "enhancement." [*] This is a reasonable approach.

---

[*] The magistrate recommended that the award be "enhanced" due to the contingency fee arrangement and the delay factor. We note, however, that the adjusting of awards to account for delay does not ordinarily constitute "enhancement." *See Morgado v. Birmingham-Jefferson City Civil Defense,* 706 F.2d 1184, 1194 (11th Cir.1983).

Although we stated in *Carmichael I* that the award should "probably" be enhanced due to the contingency fee arrangement, on this record, we are unable to find that the district court abused its discretion in refusing to enhance the award due solely to the contingency arrangement.