Guy H. BISHOP, Plaintiff,

v.

OSBORN TRANSPORTATION, INC., et
al., Defendants.

Civ. A. No. 86–AR–1345–M.

United States District Court,
N.D. Alabama, M.D.

April 26, 1988.

Myron K. Allenstein, Roy Moore, Gadsden, Ala., for plaintiff.

George P. Ford, Simmons, Ford & Brunson, Gadsden, Ala., Maibeth J. Porter, Maynard, Cooper, Frierson & Gale, P.C., Birmingham, Ala., for Osborn Transp., Inc.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration the motion of plaintiff, Guy H. Bishop, for attorney's fees. It erroneously invokes 29 U.S. C. § 1332(9)(1), a non-existent statute. The court deduces that Bishop means to invoke 29 U.S.C. § 1132(g)(1), which provides:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Bishop's original motion for an award of fees for the trial court proceedings in his ERISA action was filed on March 16, 1987 before Bishop appealed to the Eleventh Circuit. That motion was held in abeyance pending the appeal.

Although the Eleventh Circuit affirmed this court in all respects by decision rendered on March 1, 1988, *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.1988), Bishop, on March 25, 1988, filed a supplemental motion for attorney's fees seeking to recover for the lawyer-hours spent on the unsuccessful appeal.

### I. Attorney's Fees in ERISA Cases.

The subsection of the ERISA attorney's fee statute here invoked provides for a *discretionary* award and does not contain the "prevailing party" language of 42 U.S.C. § 1988, nor the language of similar import contained in 29 U.S.C. § 1132(g)(2)(D). *See Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587 (9th Cir.1984), and *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820 (7th Cir.1984). The relative merit of Bishop's positions, both at trial and on appeal, is but *one* of the factors to be considered. It is not the *sine qua non* for an award under § 1132(g)(1). *See Sokol v. Bernstein*, 812 F.2d 559, 561 (9th Cir.1987). Also, it must be kept in mind that not every *"meritorious"* claim is successful. A claim can have *merit* without prevailing.

The Eleventh Circuit in *Nachwalter v. Christie*, 805 F.2d 956, 961 (11th Cir.1986), pointed out that unlike the fee shifting provisions in other statutes, subsection 29 U.S.C. § 1132(g)(1) does not set forth criteria governing the court's determination of when to make fee awards. Similarly, the legislative history furnishes no guidelines. *Id.* In *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980), the Fifth Circuit, in a decision binding on this court, adopted five factors as the nuclei of concerns governing the district court's discretionary determination of whether to award attorney's fees in an ERISA case:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Iron Workers*, 624 F.2d at 1266 (footnotes and citations omitted).

This list of factors is not exclusive, and no single factor is necessarily dispositive under a given set of facts. *Id.* It is doubly important here that the court consider the five *Iron Workers* factors, since the Eleventh Circuit has held that the same factors which govern the award of attorney's fees at the trial stage govern the allowance of an award of attorney's fees for work performed on appeal. *Nachwalter*, 805 F.2d at 961.

## II. The District Court's Authority to Award Fees For Appellate Proceedings.

■ Although 29 U.S.C. § 1132(g), as elucidated in *Nachwalter*, allows for the recovery of attorney's fees and costs incurred on appeal, and even allows the losing party, under certain circumstances, to recover attorney's fees, *Sharron v. Amalgamated Insurance Agency Services, Inc.*, 704 F.2d 562, 569 (11th Cir.1983), Bishop did not prevail on his appeal. The fact that this court encouraged the appeal and would have thoroughly enjoyed being reversed for having held that ERISA precludes any and all awards of punitive damages in any ERISA case does not, *in and of itself,* provide a reason now for paying plaintiff out of defendants' pocket for "having tried." [1] More later on this subject.

Bishop did not seek directly from the Eleventh Circuit an award of fees for lawyer-hours spent on appeal, and the Eleventh Circuit did not address the issue of its own motion. The Eleventh Circuit was aware that this court had deferred its decision on whether to award fees and, if so, how much, because the Eleventh Circuit resolved the potential appellate jurisdictional bar presented by this court's reservation of the determination of the fee award by finding that a fee award under ERISA is collateral, and not integral to the merits of

the ERISA action. *Bishop v. Osborn*, 838 F.2d at 1174.

Despite the *Nachwalter* holding that courts of appeals *may* exercise their authority to make an award, that decision does not purport to abrogate nor to erode the general rule that the award of attorney's fees on appeal should ordinarily be fixed in the first instance by the district court after it is presented with evidence as to the extent and nature of the services rendered. *Perkins v. Standard Oil Co. of California*, 399 U.S. 222, 223, 90 S.Ct. 1989, 1990, 26 L.Ed.2d 534 (1970) (award of attorney's fees for anti-trust violation); *see Stone v. City of Wichita Falls*, 668 F.2d 233 (5th Cir.Unit A, Feb. 18, 1982) (award under 42 U.S.C. § 1988). Thus, it is appropriate for this court to consider both of the applications for attorney's fees submitted by counsel for plaintiff, particularly since the identical factors are to be considered by the awarding court in assessing both applications.

## III. Should the Court Award Fees for the Trial Court Proceedings?

■ Turning first to the application as related to the trial court proceedings, the five *Iron Workers* factors lead this court to the conclusion that this is a compelling case for an award of attorney's fees.

First and most significantly, the court in its final judgment of March 4, 1987, determined that "Osborn violated 29 U.S.C. § 1140, by selecting a date for Bishop's termination for the purpose of interfering with his attainment of medical benefits which were due him under the Plan as an employee lawfully terminated on September 11, 1985." Since Osborn purposefully, and in order to avoid paying benefits, altered the actual date of Bishop's discharge, this court expressed the opinion that such an outrageous action would allow exempla-

---

1. For this court's current beliefs on the claimed preclusive effect of ERISA on state law claims, see *Amos v. Blue Cross–Blue Shield of Alabama*, 681 F.Supp. 1515 (N.D.Ala., 1988), in which this court should have cited *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820 (7th Cir.1984), in which the Seventh Circuit, discussing Bittner's claim for punitive damages, said:

> It should make no difference that instead of bringing a separate suit claiming damages for intentional infliction of emotional distress Bittner joined that claim with his ERISA claim in a single state court suit.
> 728 F.2d at 825.

ry damages and/or damages for mental pain and anguish if such relief were not foreclosed under the enforcement provisions of 29 U.S.C. § 1132 governing violations of § 1140. Thus, Osborn's highly culpable behavior, amounting to "bad faith," weighs heavily in favor of an award of fees in this case.

The second *Iron Workers* factor equally compels an award of fees. Osborn has not argued an inability to pay fees in this case nor that an award would cause it serious financial hardship. Bishop, himself, is indigent and was granted *in forma pauperis* status for his appeal. This factor recognizes that the relative abilities of the parties to pay attorney's fees is relevant. This factor not only militates against awards of fees against employee plaintiffs in favor of defendant employers, but has also been aptly compared to a factor in considering the award of fees under LMRDA, 29 U.S.C. § 401 *et seq.* *CMTA–IAM*, 746 F.2d at 590. The Supreme Court said about that section:

> "Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose.... An individual union member could not carry such a heavy financial burden. Without counsel fees the grant of federal jurisdiction is but a gesture for few union members could avail themselves of it."

*Id.* (quoting *Hall v. Cole*, 412 U.S. 1, 13, 93 S.Ct. 1943, 1950, 36 L.Ed.2d 702 (1973)). Bishop's right to recover his rightful benefits should not be nullified, as a practical matter, by forcing him to incur attorney's fees which would exceed his potential award. Based on this economic reality alone, the *CMTA–IAM* court concluded:

> [A]bsent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant.

*Id.*

Deterrence, the third criterion to be considered, is highly relevant in this case, since the Eleventh Circuit has now precluded an award of punitive damages in ERISA cases even under these egregious circumstances. A fee award may be a weak substitute for the imposition of punitive damages, the usual jurisprudential device for deterring future culpable conduct on the part of entities who act as Osborn did here. Still, it is better than nothing. Fulfilling this goal of deterrence by imposing fees adds coherence to the enforcement scheme under § 1132.

The fourth factor provides another basis for an award in this case. In *Howard v. Parisian*, 807 F.2d 1560, 1565 (11th Cir. 1987), the Eleventh Circuit acknowledged that *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3091–98, 87 L.Ed.2d 96 (1985), did not resolve the question of whether punitive damages may be recovered under § 1132(a), even under circumstances where the employer's culpability in interfering with an employee's right to benefits in violation of § 1140 is demonstrated. It was for this reason that this court encouraged Bishop to appeal, because of the need to obtain a binding expression from the Eleventh Circuit. Had Bishop prevailed on appeal and established the right to exemplary damages, as this court did not predict but hoped for, wronged plan participants in the future would have stood to benefit when faced with similar employers' deliberate violations of the Act.

Finally, the relative merits of the parties' positions in the trial court are reflected by this court's final judgment awarding Bishop his full benefits and finding that Osborn purposefully violated § 1140 by calculatedly altering Bishop's date of discharge. Implicit in this result is the total lack of merit in Osborn's refusal to pay, and the overwhelming merit in Bishop's position. The court is not persuaded by Osborn's suggestion that because only two of the four counts in his original complaint were actually tried and only one resulted in a judgment against Osborn, Bishop's case was lacking in merit. This view ignores the legitimate pre-trial narrowing of the issues for trial and is not an accurate measure of the merit of Bishop's complaint. Bishop recovered $2,047.83 ($1,895.83 in unpaid but due medical benefits and $152.00 in interest), the damages which proximately

resulted from Osborn's ERISA violation. Osborn understandably did not appeal. Osborn was lucky to dodge the punitive damages bullet, both in this court and in the Eleventh Circuit.

Consideration of each and all of the *Iron Workers* factors convinces this court that an award of attorney's fees at the trial level of this case is in order. As noted, it would be unnecessary to find all five *Iron Workers* factors present. One factor alone would be enough to trigger a finding of Bishop's entitlement to fees from Osborn.

### IV. Should the Court Award Fees for the Appellate Proceedings?

■ As established in *Nachwalter*, the same factors are to be considered in determining whether to award Bishop's fees for his efforts on appeal as in the trial court. It is again important to focus on Osborn's culpability and the deterrence goal which is ordinarily served by exemplary damages. The transgressions here involved properly provided the impetus for Bishop's continued pursuit of punitive damages, an issue undecided by the Eleventh Circuit when Bishop took his appeal. The posture of this case bolsters a finding that Bishop's appeal was "meritorious" under the fifth *Iron Workers* factor. The potential benefit to plan participants similarly situated, and the acknowledged unresolved state of the Eleventh Circuit law on an important issue under the fourth factor, support an award of fees for Bishop's efforts on appeal, despite his ultimate lack of success.

The Ninth Circuit in *Sokol v. Bernstein, supra,* faced a similar application for an award of fees for an ultimately unsuccessful appeal and found that an award was warranted under the five factors identical to those in *Iron Workers.* The factors are set forth in *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446 (9th Cir.1980). In *Sokol,* had it not been for the employer's initial bad faith in handling plaintiff's pension entitlement, the appeal would not have been taken. Similarly, the employer there did not object on the basis of inability to pay the award under the second factor, and the court found that plaintiff had taken appro-

priate action to enforce his ERISA rights under the law. The *Sokol* court's further findings echo this court's views regarding the application of the *Iron Workers* factors to Bishop's case:

> [T]he appeal sought to resolve a significant legal question regarding ERISA; the availability *vel non* of damages for emotional distress under § 502(a)(3). Finally, there is no question that the equities in this litigation lie with Sokol. These considerations mirror those that we found in affirming the district court's award of attorneys' fees at the trial level.

812 F.2d at 561.

The *Sokol* court stressed that the "prevailing party" concept is not determinative under the *Hummell–Iron Workers* five-factor analysis. Osborn's objections, focusing on the inapplicable 42 U.S.C. § 1988 case law, are similarly not persuasive to this court. This court therefore finds that attorney's fees for Bishop's unsuccessful appeal are due to be awarded, although perhaps not to the extent they are due for the lawyer effort expended at the trial level.

### V. The Amount of Attorney's Fees to be Awarded.

Having determined that an award of fees is due, this court must now determine what amount is reasonable. *Dameron v. Sinai Hospital of Baltimore,* 644 F.Supp. 551 (D.Md.1986) *aff'd in part, rev'd in part* 815 F.2d 975 (4th Cir.1987); *see Fulmer v. Connors,* 665 F.Supp. 1472 (N.D.Ala.1987) (Haltom, J. reserving determination of the amount of fees to enable parties to mutually agree on a reasonable fee, followed by a submission of a motion and evidentiary hearing in the event parties were unable to agree); *Holmes v. Oxford Chemicals, Inc.,* 510 F.Supp. 915 (M.D.Ala.1981) (Hobbs, J.) *aff'd* 672 F.2d 854 (11th Cir.1982). The court in *Holmes* correctly employed the factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), as guides in arriving at an appropriate award after concluding that an award was due under ERISA.

Plaintiff has not complied with Local Rule 11 of the Northern District of Alabama which, *inter alia,* provides:

(c) The motion shall ... state the amount (or provide a fair estimate of the approximate amount) of the fees and expenses sought. Within 30 days (or such other period as the court may prescribe) after filing the motion, the movant shall file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and other supporting documentation.

Local Rule 11 is designed to place the burden on a seeker after fees to furnish evidence covering the relevant criteria discussed in this court's regular Exhibit "A" attached hereto. Plaintiff has not done this. On the other hand, defendant has failed to recognize or respond to the *Iron Workers* factors and has proceeded as if this were a fee application strictly under 42 U.S.C. § 1988. Defendant ignores the ERISA difference.

First, Osborn suggests that there has been unnecessary duplication of effort by Bishop's two counsel. In light of the court's broad discretion to award fees under § 1132(g)(1), this court will not step into the thicket created by *Carmichael v. Birmingham Saw Works,* 814 F.2d 590 (11th Cir.1987). Further, this court is unwilling in this case to judge the minutiae which would be involved in resolving this fee dispute under the *Birmingham Saw Works* analysis which would compel this court to identify and to explain any and all hours it might disallow for unnecessary expenditure of lawyer time. In this case the casuistry which might be necessary to touch all bases set forth in *Birmingham Saw Works* is unnecessary because the *Johnson* factors must be applied against the backdrop of ERISA's essential remedial purpose, i.e., to *protect* the beneficiaries of private pension plans. *Nachwalter,* 805 F.2d at 962. ERISA's remedial purpose encourages access to federal courts for private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans. The potential award of fees is an important mechanism for furthering ERISA's remedial goals. *Id.* This

court, therefore, has much broader discretion under 29 U.S.C. § 1132(g)(1) than it would have under 42 U.S.C. § 1988.

There undoubtedly is a § 1988 case lurking right around the corner in which this court will have to exercise the patience and temerity to question and to analyze "on paper" the lawyer-hours allegedly spent by counsel for a prevailing party and the reasonableness of those hours under *Birmingham Saw Works.* This is not that case. It would not make sense to decide that an award of attorney's fees here will act as a deterrent, as in *Iron Workers,* and then to be stingy with the award by conducting a day-long hearing and "fly-specking" the fee claim to death, or almost. When Bishop's two lawyers tell this court that they both attended the same depositions on April 2, 1986, this court is unwilling to hold that this duplication was unnecessary, particularly when this is a relatively insignificant factor *in this case.* This court's previously expressed tendency toward realism in judging lawyer-hours may have to be rethought in a future case in light of *Birmingham Saw Works.* *Bishop v. Osborn* is not the case in which to articulate disbelief or dismay over a fee request.

One fault which this court finds with Bishop's application for attorney's fees under Local Rule 11 is the absence of any proof of a customary hourly rate for lawyers in ERISA cases in this geographic area, or, for that matter in any other kind of case or any other geographic area. In an act of charity and in an exercise of its discretion, this court takes judicial notice of the range of customary lawyer-hour rates in the Northern District of Alabama. For the purposes of this opinion, the court will employ the bottom of that range, namely, $75.00 per lawyer-hour. The court must assume that if plaintiff's counsel thought they were worth more than $75.00 per hour they would have offered some proof of it.

Another fault which this court finds with plaintiff's application is plaintiff's failure to inform the court whether or not there was a contingent fee arrangement, and, if so, its terms. Again, the court will

risk assuming that there was a contingent fee arrangement which provided that Bishop's counsel would be compensated only if a fee award were to be entered against Osborn. The court cannot believe that an indigent plaintiff contracted to pay a fixed fee or an hourly rate, and if plaintiff's counsel agreed to the maximum permissible contingency of 50% of all sums recovered, they would still be grossly underpaid unless they obtain compensation from defendant.

■ The court will use its regularly employed Exhibit "A," hereto attached, as its expression of the consideration given the various factors in determining the fees to be awarded in this case. The court will, however, simultaneously remember its broad discretion and the purpose of ERISA. This analysis leads this court to the conclusion that an appropriate and reasonable attorney's fee in this case both for the trial and the appeal is $14,000.00 and that plaintiff's attorneys are entitled to be reimbursed for their $709.90 reasonable litigation expense.

An appropriate separate order will be entered.

### EXHIBIT A

#### (Not as Yet Revised in Light of *Carmichael v. Birmingham Saw Works*, 814 F.2d 590 (11th Cir.1987))

The checklist which follows was formulated after considering the lessons learned from the following cases: *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974); *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *Copper Liquor, Inc. v. Adolph Coors Co. (Copper Liquor II)*, 624 F.2d 575 (5th Cir.1980); *Copper Liquor, Inc. v. Adolph Coors Co. (Copper Liquor III)*, 684 F.2d 1087 (5th Cir.1982); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986);

*Jones v. Central Soya Co.*, 748 F.2d 586 (11th Cir.1984); and *Glenn v. General Motors Corp.*, 658 F.Supp. 918 (N.D.Ala.1987).

In *Johnson*, the Fifth Circuit identified twelve factors which are to guide the trial judge in calculating an appropriate attorney's fee:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to properly perform the legal service;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson*, 498 F.2d at 717–19.

In *First Colonial*, the Fifth Circuit established a three-step process to aid in calculating the fee: (1) ascertain the nature and extent of the legal services which should produce the number of hours; (2) set an hourly value on the services; (3) multiply the hours by the rate to obtain the amount of reasonable compensation which must be explained by the judge by evaluating each of the *Johnson* factors and how the decision was affected by each. *First Colonial Corp.*, 544 F.2d at 1299–1300.

In *Copper Liquor II*, the Fifth Circuit acknowledged that the three-step process set out in *First Colonial* is markedly similar to the "lodestar" method of calculating attorney's fees defined by the Third Circuit in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973). The *Copper Liquor II* court stated that steps one and two, the determination of the

hours spent and the hourly rate, represent *Johnson* factors (1), (5), (8) and (9). In the third step the trial court should adjust the initial amount by evaluating the other eight *Johnson* factors. *Copper Liquor II,* 624 F.2d at 583. Subsequently the "lodestar" concept has dominated the judicial conversation.

In *Copper Liquor III,* the Fifth Circuit noted (1) that in step three, all remaining *Johnson* factors need not be examined, but only those relevant to the case, (2) that only in "exceptional" cases should the court decrease the initial fee, and (3) that in evaluating the remaining *Johnson* factors the court might well enhance the initial award. *Copper Liquor III,* 684 F.2d at 1094–97.

In *Hensley,* the Supreme Court stated (1) that multiplying the reasonable number of hours by a reasonable rate does not necessarily end the inquiry, (2) that other considerations may lead the district court to adjust the fee upward or downward, and (3) that "in some cases of *exceptional* success an enhanced award may be justified." *Hensley,* 103 S.Ct. at 1940. (emphasis supplied). In other words, it would be highly unusual to exceed the "lodestar." The *Hensley* court pointed out that although "[t]he District Court may consider the [Johnson] factors ... many such factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at n. 9. Also the Court in *Hensley* recognized that a prevailing plaintiff should *not* be compensated for time and effort spent exploring blind alleys, that is, unless the exploration of a blind alley was reasonably necessary to achieve the successful result. *Id.* at 1940.

The Supreme Court in its most recent statement on the calculation of attorney's fees nailed down its position on the "lodestar" by explicitly stating:

> [W]e specifically held in *Blum [Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)] that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.

*Delaware Valley,* 106 S.Ct. at 3098.

The Court in *Delaware Valley* reiterated that "[a]lthough upward adjustments of the lodestar figure are still permissible, ... such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Id.* (citing *Blum,* 104 S.Ct. at 1548–50).

From a reading of these cases, the *Johnson* factors 1, 2, 3, 5, 8 and 9 are clearly subsumed within the initial calculations of hours reasonably expended at a reasonable hourly rate. Perhaps other factors are subsumed as well. The Court in *Blum* and *Delaware Valley* has expressed an increasingly strong preference for including all the relevant factors within the lodestar itself (with the possible exception of "contingency" which the Court refused to decide in both *Blum* and *Delaware Valley* ). Nevertheless, "contingency" is still recognized as a possibly enhancing factor by the Eleventh Circuit. *Jones v. Central Soya Co.,* 748 F.2d 586 (11th Cir.1984).

The strong presumption that the "lodestar" itself constitutes the reasonable fee is supported by factors stated in the *Delaware Valley:*

> In short, the lodestar figure includes most, if not all, of the relevant factors comprising a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

*Id.* at 3098–99. *See also Glenn v. General Motors Corp.,* 658 F.Supp. 918 (N.D.Ala. 1987).

## CHECKLIST FOR DETERMINING REASONABLE ATTORNEY'S FEES

The following check marks indicate how the court evaluates each possible relevant factor in arriving at a reasonable fee.

THE LODESTAR COMPUTATION:   $75.00 (reasonable hourly rate)
×200.75(reasonably    spent    hours) =
$15,056.25

| | | SUBTRACT | SUBSUMED or NEUTRAL | ENHANCE |
|---|---|---|---|---|
| (1) | The time and labor required | | ✓ | |
| (2) | The novelty and difficulty of the questions | | ✓ | |
| (3) | The skill requisite to properly perform the legal service | | ✓ | |
| (4) | The preclusion of other employment by the attorney due to acceptance of the case | | ✓ | |
| (5) | The customary fee | | ✓ | |
| (6) | Whether the fee is fixed or contingent | | | ✓ |
| (7) | Time limitations imposed by the client or the circumstances | | ✓ | |
| (8) | The amount involved and the results obtained | ✓ | | |
| (9) | The experience, reputation, and ability of the attorneys | ✓ | | |
| (10) | The "undesirability" of the case | | ✓ | |
| (11) | The nature and length of the professional relationship with the client | | ✓ | |
| (12) | Awards in similar cases | | ✓ | |
| (13) | Successful v. unsuccessful aspects | ✓ | | |